DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Raymond Zimon, appeals from an order of the Medina County Court of Common Pleas, Domestic Relations Division, which formalized his divorce from Appellee, Stacy Zimon. We affirm in part and reverse in part.
 I. {¶ 2} Raymond and Stacy were married on June 4, 1993, and have two children, currently ages ten and seven. Each party had pre-marital property, and some portion of Raymond's property was used as down payment on the marital residence, purchased on November 18, 1993. Prior to and throughout the marriage, Raymond was employed as a pharmacist, which paid him a salary of $89,700 at the time of the divorce and included a 401(k) retirement plan. Stacy had worked a variety of jobs and was most recently employed as a waitress, which paid her a 2002 income of $10,953. At the time of the divorce, Stacy was attending court reporting school, which provided no income.
 {¶ 3} In March 2002, Stacy took the children, left the home and filed a complaint for divorce, including a motion for spousal and child support. A magistrate awarded Stacy temporary residential parent and legal custodian status, and ordered Raymond to pay monthly child and spousal support, effective August 27, 2002. Raymond paid the support until the trial court's final divorce decree in February 2004, paying approximately $17,800 in child support and $20,400 in spousal support over this 17-month period.
 {¶ 4} The matter came before the trial judge in September and October 2003, and the parties stipulated to certain outstanding collective debts and allocation of certain personal property. However, a dispute ensued as to whether Raymond had actually stipulated to a particular debt and select items of property. The parties also agreed to a Shared Parenting Plan, in which the children would reside with Raymond, while Stacy would receive parenting time and pay child support, effective October 2003. Raymond continued to pay support to Stacy.
 {¶ 5} The trial court journalized the divorce decree on February 2, 2004, and the associated Qualified Domestic Relations Order (QDRO) on May 5, 2004. Raymond timely appealed, asserting six assignments of error for review.
 II. A. First Assignment of Error
"The trial court erred when it failed to include appellant's spousal support payments as income to appellee and failed to deduct said payments from the income of appellant for the purpose of calculating appellee's child support obligation."
 {¶ 6} Raymond alleges that the trial court incorrectly calculated the child support owed to Raymond by Stacy, because it failed to account for Raymond's spousal support payments to Stacy in quantifying their respective incomes. We agree.
 {¶ 7} The nature of our review of this issue begins with statutory interpretation, and upon a proper application of the statute, proceeds to review the child support calculations for an abuse of discretion. SeeZeitler v. Zeitler, 9th Dist. No. 04CA008444, 2004-Ohio-5551, at ¶ 7. The statute provides:
 "`Gross income' means * * * the total of all earned and unearned income from all sources during a calendar year, * * * and includes * * * spousal support actually received * * *." R.C. 3119.01(C)(7).
Similarly, the computation worksheet provides for such an adjustment in lines 6 and 10. R.C. 3119.022. In our review of these provisions, we agree with the reasoning of the Second District Court of Appeals, which stated:
 "We conclude that in enacting R.C. Chapter 3119, the General Assembly has codified the common sense notion that in determining the relative income of the parents, spousal support paid from one parent to the other should be included in the obligee's income, and excluded from the obligor's income." Posadny v. Posadny (Feb. 22, 2002), 2nd Dist. No. 18906.
Therefore, a proper application of the statute requires an adjustment to Stacy's gross income to increase it by the amount of the spousal support she receives from Raymond, and a corresponding decrease in Raymond's gross income, for purposes of the child support calculations.
 {¶ 8} The trial court ordered that Raymond must pay Stacy spousal support of $1,600 per month, which is $19,200 per year. Therefore, $19,200 should be added to Stacy's income (line 6) and deducted from Raymond's income (line 10). Therefore, we conclude that the trial court must recalculate the child support computations, following this understanding of the statute. Raymond's first assignment of error is sustained.
 B. Second Assignment of Error
"The trial court erred when it found that the appellant agreed to the list of household goods and furnishings submitted by the appellee."
 {¶ 9} Raymond alleges that the trial court incorrectly allocated three specific items of personal property to Stacy, based on the court's erroneous conclusion that he had agreed to her request for the items: a v-shaped diamond necklace, a work-out unit, and a desk. Raymond explains that he opposed the request at the hearing, and contests this distribution now by arguing that the express basis for the distribution is in error. We agree.
 {¶ 10} In divorce proceedings, the trial court's property division is reviewed under an abuse of discretion standard. Cherry v. Cherry (1981),66 Ohio St.2d 348, 355. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. At the hearing, Raymond testified that there is no such diamond necklace, that he preferred to keep the work-out unit for himself and his children, and that the desk was a Christmas gift from his parents that he would like to keep. However, without explanation, the trial court found that Raymond not only failed to contest the request, but affirmatively agreed. On review, we note that the court's finding is unexplained and directly contradicted by the only testimony on the matter, Raymond's testimony. Therefore, we find this outcome to be arbitrary and unreasonable. See id. This assignment of error is sustained.
 C. Third Assignment of Error
"The trial court erred in identifying the outstanding credit card balances that the parties stipulated to at trial."
 {¶ 11} Raymond alleges that the trial court miscalculated Stacy's equity in the marital property, by misrepresenting the parties' debts. He explains that this occurred due to an unexplained discrepancy between the tabulated debt as stipulated by the parties in the trial exhibit and the version transcribed into the court's journal entry. We agree. Furthermore, Stacy agrees.
 {¶ 12} The trial court calculated the outstanding balance due to creditors to be $20,322.11. Based on the admitted evidence, Raymond demonstrates that the correct value is $26,198.65. However, we recognize that the specific value is a finding of fact, to be properly determined by the trial court on remand. This assignment of error is sustained.
 D. Fourth Assignment of Error
"The trial court erred and abused its discretion when it awarded spousal support for a specified duration, but then provided that `the court shall retain jurisdiction over all aspects of spousal support.'"
 {¶ 13} Raymond alleges that the trial court improperly awarded spousal support to Stacy for an indefinite duration, despite the express language of the judgment entry, which limits spousal support to "the earlier occurrence of the death of either party, the wife's remarriage or cohabitation with an unrelated male or the expiration of thirty-six months." This would appear to be an express limit of the duration. However, Raymond argues that the effect of the journal entry is to create an indefinite duration, because the court retained jurisdiction over all aspects of the spousal support. We disagree.
 {¶ 14} The trial court may reserve jurisdiction to adjust or modify the award of spousal support, but it must do so expressly. R.C. 3105.18(E). In the present case, we conclude that the trial court merely reserved the authority to adjust or modify the award, during the pendency of that award, as would be anticipated and required by the statute. As such, we cannot conclude that the trial court abused its discretion. This assignment of error is overruled.
 E. Fifth Assignment of Error
"The trial court erred and abused its discretion when it found that the appellant had failed to establish a separate property investment in the marital residence."
 {¶ 15} Raymond alleges that the trial court denied him his rightful portion of individual equity in the marital residence, because the court failed to recognize his investment of his separate property on the front end, and furthermore, failed to calculate the separate appreciation of this investment on the back end. Specifically, Raymond argues that, on the front end, he invested approximately $10,000 of separate, individual property towards the down payment of the home in the form of a mutual fund withdrawal, an employee performance bonus, and a preexisting bank account. On the back end, Raymond urges that the equity in the home is passive appreciation, which should be proportionately attributed to his separate property investment and allocated accordingly. Based on the trial court's misapprehension of this information, Raymond insists that a recalculation is warranted. We agree.
 {¶ 16} "Separate property" includes that real or personal property, including money, which was acquired by one spouse prior to the marriage. R.C. 3105.171(A)(6)(a). The commingling of this separate property during marriage does not destroy its individual identity, unless the commingling is sufficiently extensive as to render the identity untraceable. R.C. 3105.171(A)(6)(b). The spouse seeking to identify, and protect, his or her own separate property bears the burden of tracing the existence of the separate property, within the otherwise commingled property. Peck v.Peck (1994), 96 Ohio App.3d 731, 734.
 {¶ 17} Once traced, the separate property is to be distributed to its individual owner. R.C. 3105.171(D). Moreover, any passive appreciation of that separate property is also removed from the commingled marital property and distributed to the individual owner. R.C. 3105.171(A)(6)(a)(iii). In the case of a marital residence, passive appreciation includes the increased equity in the home due to market conditions, as opposed to active appreciation resulting from investment or labor. Ray v. Ray, 9th Dist. No. 03CA0026-M, 2003-Ohio-6323, at ¶ 6.
 {¶ 18} Raymond argues that he brought to the marriage three particular types of separate property, which he then applied towards the down payment of the marital residence: approximately $5,000 in mutual fund withdrawal, approximately $2,000 in an employee performance bonus, and approximately $3,000 in a preexisting bank account. Raymond insists that he traced the separate character of each of these items, as would be required of him under the law. See Peck, 96 Ohio App.3d at 734. The trial court concluded that he did not, based on its opinion that he produced no evidence, which is contrary to the record and otherwise confused by inaccuracies in the journal entry.
 {¶ 19} Raymond begins his argument by informing this Court that the journal entry erroneously represents the marriage date as June 4, 1992 (when it was actually June 4, 1993), and inaccurately specifies and tabulates the shares of stock reportedly owned and redeemed by Raymond at particular times. Stacy contends that these errors had no effect on the conclusions reached; however, we disagree. In the ordinary course, such patent errors would at a minimum undermine the credibility of the calculations or conclusions, and in the present case these representations are highly informative to the questions of pre-marital vs. marital assets, separate vs. joint investments, and tracked vs. commingled monies. Therefore, we reject Stacy's assertion that the trial court's findings are supported by credible evidence.
 {¶ 20} Regarding the mutual fund withdrawal, Raymond posits that the admitted evidence demonstrates his tracing of his separate property. He opened the account in his own name on January 24, 1992, and accumulated shares without any withdrawals until August 12, 1993, when he withdrew the $5,000 in question. On June 4, 1993, the date of the marriage, he owned 263.178 shares of separate, individual property. The account increased to 294.002 shares as of August 12, 1993, which represents 30.824 shares accumulated during marriage. On August 12, 1993, he withdrew 241.896 shares ($5,000) for use as part of the down payment on the marital residence. Subtracting all of the marital shares (30.824) from total shares withdrawn (241.896) results in 211.072 shares that musthave been Raymond's separate property, and which reflects $4,362.86 when multiplied by the market price of the shares ($20.67) on August 12, 1993. Therefore, the evidence dictates a finding that at least $4,362.86 (211.072 shares) of Raymond's personal property was invested in the home.
 {¶ 21} Regarding the employee performance bonus, Raymond posits that the admitted evidence demonstrates that on July 6, 1993, he deposited a bonus check from his employer in the amount of $2,135.88. Furthermore, he testified that this bonus represented money which accrued to him during the prior fiscal year (April 1992 to March 1993), and was therefore separate property earned prior to the marriage. This testimony was uncontradicted, as Stacy's attorney stated his intent not to discuss it. However, the journal entry erroneously states that Raymond did not claim this as separate property. This is not the sort of competent and credible evidence that would support such a finding. See Peck,96 Ohio App.3d at 734. Rather, the evidence leads to a conclusion that this $2,135.88 was traceable to Raymond's personal property, and was subsequently invested in the home.
 {¶ 22} Regarding the preexisting bank account, Raymond posits that the admitted evidence demonstrates that as of the June 4, 1993 marriage date, he owned at least $3,109.19 of separate, individual property in a personal savings account, which he thereafter used as part of the down payment on the home. Stacy replies that, at the time of withdrawal in November 1993, whatever money was contained in this account was so commingled as to be marital property.
 {¶ 23} On review of the record, we find that Raymond did present evidence that this account contained $3,109.18 on April 12, 1993, and that a series of deposits and at least one withdrawal ensued, with the final record entry dated August 17, 1993, at a balance of $16,541.36. Raymond also produced evidence of a check dated November 17, 1993, drawn on this account for an amount of $15,500 and payable to Freedom Mortgage, for purpose of down payment on the marital residence. However, there is no documentation to prove, or even suggest, that there were no other deposits or withdrawals to this account during the intervening three months from August 17, 1993 to November 17, 1993. The burden of tracing separate property through a commingled account rests with the party claiming that separate property. See Peck, 96 Ohio App.3d at 734. The evidence admitted regarding this account appears insufficient to meet that burden, and we have no basis to conclude that this $3,109.18 was traceable to the money subsequently invested in the marital home.
 {¶ 24} As the second part of this assignment of error, Raymond builds upon his basis that he invested separate property into the marital residence, and insists that the equity in the residence is passive appreciation, which should be proportionately attributed to his separate property investment and allocated accordingly. We begin by acknowledging the uncontested finding of the trial court that the down payment was $16,080.00 and the mortgage balance had been reduced $14,337.19 by the date of trial, constituting a total investment into the marital residence of $30,417.19. Based on our above finding that Raymond contributed $6,498.74 of separate property ($4,362.86 from the mutual fund shares, plus $2,135.88 from the employment bonus), we recognize that this amount represents 21.4% of the total investment in the marital residence.
 {¶ 25} The trial court then concluded that the fair market value of the home was $168,000 and subtracted the outstanding mortgage balance of $117,500 to arrive at the Zimons' homeowners' equity value of $50,500. From this, the court subtracted a $3,000 debt due to Stacy's mother, and the outstanding debt to the remaining creditors. As discussed in the third assignment of error, above, the actual outstanding debt to creditors appears to be $26,198.65. Subtracting these two values produces: $50,500 — $3,000 — $26,198.65 = $21,301.35. This value is the net equity remaining in the marital residence at the time of divorce, which corresponds to a total investment into the marital residence of $30,417.19.
 {¶ 26} Raymond claims the portion of this equity that results from his investment of his individual property, as well as any passive appreciation on that investment, as well as his split of the marital investment. See Ray at ¶ 6. As there was no evidence of additional investment or labor, then any appreciation would be passive appreciation and would be properly allocated to Raymond in an amount proportionate to his investment. See id. Therefore, because Raymond's separate property investment constituted 21.4% of the total investment, his separate property allocation should represent an equivalent portion of the net equity: 21.4% of $21,301.35, or $4,551.14. While this amount is significantly less than his initial investment ($6,498.74 invested, but only $4,551.14 returned), we reason that the consequence of some passive depreciation or capital loss is correspondingly applied to the separate property investment as is a passive appreciation or gain, and we do not read the prevailing law to insulate the separate property investor against such loss. See, generally, Ray, supra.
 {¶ 27} Accordingly, the remaining equity ($16,750.21) is divided equally between the parties, $8,375.11 each; resulting in a total of $12,926.24 for Raymond and $8,375.11 for Stacy. Based on the foregoing, we conclude that the trial court erred. This assignment of error is sustained.
 F. Sixth Assignment of Error
"The trial court erred when it failed to utilize a de facto termination date for the marriage."
 {¶ 28} Raymond alleges that the trial court's decision to rely on the divorce decree of February 2, 2004, rather than the actual separation in March 2002, resulted in inequity. Specifically, Raymond argues that March 2002 was the de facto termination date, such that assets he accumulated after that date were inequitably distributed to Stacy and temporary spousal support he began paying on that date was not credited towards the spousal support calculation. We agree.
 {¶ 29} Raymond argues a basic premise that "equity may require valuation of the marital assets on the date of the de facto termination of the marriage." Gullia v. Gullia (1994), 93 Ohio App.3d 653, 666, citing Berish v. Berish (1982), 69 Ohio St.2d 318, 320. He insists that it is inequitable for the trial court to distribute to Stacy any portion of his 401(k) retirement savings that he accumulated after March 2002, at which time Stacy had departed the martial residence, ceased contributing to any accumulation of marital property, and was actually receiving from him significant child and spousal support. Similarly, he argues that equity demands that the trial court's order of 36 months of spousal support should begin in March 2002, when Stacy actually left and he actually began paying spousal support, rather than the seemingly arbitrary date when the divorce order is ultimately effectuated.
 {¶ 30} Based on the foregoing, we conclude that Raymond's argument is well made, and that a distribution of property accumulated after Stacy had stopped contributing to the marriage and had actually begun receiving support would be inequitable. See id. Similarly, we agree that it would be inequitable to ignore the temporary support paid during the pendency of the proceeding when deciding the duration of the support award, recognizing that such an omission would skew the basis for setting the duration of such awards and have the negative policy effect of encouraging the receiving spouse to prolong the proceedings in order to elongate the actual period of spousal support. Accordingly, this assignment of error is sustained. See id.
 III. {¶ 31} Raymond's first, second, third, fifth and sixth assignments of error are sustained. His fourth assignment of error is overruled. The order of the Medina County Court of Common Pleas is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this decision.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to both parties equally.
Exceptions.
Whitmore, P.J., Slaby, J. Concur.