DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant Danilo Vujovic has appealed the decision of the Medina County Court of Common Pleas, Domestic Relations Division, that distributed property, determined child support, and determined spousal support at the time of divorce. This Court affirms in part and reverses in part.
 I {¶ 2} On March 20, 2002, Appellant filed a complaint for divorce against Defendant-Appellee Dragana Vujovic. Appellee responded to the complaint, and filed a counterclaim requesting temporary and permanent custody of the couple's minor child T.V., as well as temporary and permanent child support. Pursuant to the terms of an agreed judgment entry dated May 7, 2002, Appellee became the temporary custodial parent of T.V., and Appellant was given visitation rights.
 {¶ 3} Throughout the course of litigation between the parties, a guardian ad litum ("GAL") was appointed by the trial court. The GAL filed his report regarding T.V. with the trial court on March 5, 2003.
 {¶ 4} Beginning on March 17, 2003, a two day hearing regarding property distribution, child support, and spousal support was held before the trial court. On November 17, 2003 the trial court announced its decision granting Appellant and Appellee a divorce. The trial court also made a property distribution award regarding the couple's real and personal property; a spousal support award ordering Appellee to pay Appellant spousal support; and a child support award ordering Appellant to pay Appellee child support. Appellee was awarded custody of T.V. and Appellant was granted visitation rights.
 {¶ 5} On December 10, 2003, Appellant filed a motion to modify child support and spousal support. On December 12, 2003, Appellant also filed a notice of appeal of the trial court's November 17, 2003 decision.
 {¶ 6} On February 4, 2004, Appellee filed a notice of intent to relocate T.V., a motion for contempt against Appellant for failure to comply with the terms and provisions of the divorce decree, and a motion requesting modification of the child support computation worksheet and spousal support obligation. On February 27, 2004, Appellant filed a motion for, among other things, contempt against Appellee and modification of parental rights and responsibilities.
 {¶ 7} By journal entry dated March 15, 2004, this Court dismissed Appellant's appeal because a Qualified Domestic Relations Order ("QDRO") of a Key Corp 401(k) retirement account owned by Appellee had never been filed. Thus we concluded that the November 17, 2003 judgment entry of divorce was not a final, appealable order.
 {¶ 8} Following our dismissal, the parties filed various motions regarding visitation and other issues involving T.V. including another motion by Appellant to modify his child support obligation. On October 4, 2004 a pre-trial hearing was held before a magistrate regarding, among other things, Appellant's motion to modify parenting time and child support. On October 18, 2004, the parties filed a QDRO pertaining to Appellee's Key Corp 401(k) retirement account, thus making the November 17, 2003 judgment entry of divorce a final, appealable order.
 {¶ 9} Appellant has timely appealed the trial court's November 17, 2003 decision, asserting five assignments of error. The trial court has stayed its proceedings on all motions pending this Court's disposition of the instant appeal. We have consolidated two of Appellant's assignments of error for ease of analysis.
 II Assignment of Error Number One
"The trial court erred and committed an abuse of discretion in the division of marital property by awarding to appellee a portion of appellant's separate property interest in the marital residence."
 {¶ 10} In his first assignment of error, Appellant has argued that the trial court erred when it awarded Appellee a portion of the appreciation of the marital residence. Specifically, Appellant has argued that the couple's marital home was his separate property and, pursuant to Ray v.Ray, 9th Dist. No. 03CA0026-M, 2003-Ohio-6323, all of the passive appreciation of the home was his separate property.
 {¶ 11} It is well established that trial courts hold broad discretion in the distribution of property in the context of divorce. Sterbenz v.Sterbenz, 9th Dist. No. 21865, 2004-Ohio-4577, ¶ 9. As such, a trial court's decision regarding a property distribution award will not be disturbed by this Court absent an abuse of discretion. Holcomb v.Holcomb (1989), 44 Ohio St.3d 128, 131. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. A trial court's decision relevant to the distribution of property at the time of divorce does not constitute an abuse of discretion when such decision is supported by some competent, credible evidence. Sterbenz at ¶ 9, citingMiddendorf v. Middendorf (1998), 82 Ohio St.3d 397, 401.
 {¶ 12} The distribution of marital property is governed by R.C.3105.171. Pursuant to the statute, during the course of a divorce proceeding, the trial court is required to determine whether property is marital property, or separate property. R.C. 3105.171(B). Separate property includes but is not limited to real property which was acquired by one spouse prior to the marriage. R.C. 3105.171(A)(6)(a)(ii). The passive appreciation of separate property is also separate property. R.C.3105.171(A)(6)(a)(iii). Passive appreciation is appreciation resulting solely from "market forces, such as location and inflation." Sterbenz, at ¶ 5; R.C. 3150.171(A)(6)(a)(iii). At the time of divorce, separate property is returned to its owner. R.C. 3105.171(D).
 {¶ 13} Appellant first has argued that the marital residence was entirely his separate property and that the trial court erred when it employed the calculation formula articulated in Nine v. Nine (March 1, 1995), 9th Dist. No. 16625, to determine that Appellee was entitled to a portion of the passive appreciation of the marital residence. Appellant has further argued that because Nine was overruled by Ray during the pendancy of the instant appeal, the instant matter must be remanded to the trial court for application of Ray. In response, Appellee has argued thatNine was the controlling case law at the time the trial court made its distribution award decision and, as a result, Ray was inapplicable thus the instant matter need not be remanded to the trial court.
 {¶ 14} Turning first to the issue of what case law controls disposition of the instant appeal, this Court notes that "[t]he general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law." PeerlessElectric Co. v. Bowers (1955), 164 Ohio St. 209, 210; see, also, Wearsv. Motorists Mut. Ins. Co., 9th Dist. No. 22027, 2005-Ohio-341, at ¶ 9;Williams v. Jones, 4th Dist. No. 04CA6, 2004-Ohio-5512, at ¶ 9. InWears, we recognized the related principal that when case law controlling disposition of a pending appeal changes during the pendancy of the appeal, the reviewing court should apply the new law to the pending appeal. Wears at ¶ 22, citing Stacy v. Wausau Business Ins. Co., 5th Dist. Nos. 2001 AP 08 0076 and 2001 AP 08 0086, 2002-Ohio-1669.
 {¶ 15} The record reveals that the trial court relied upon Nine when it calculated Appellant's separate property interest in the marital residence. This Court notes that Nine was overruled by Ray during the pendancy of the instant appeal. Therefore, this Court must vacate theNine calculation of Appellant's separate property interest in the marital residence and do a new calculation based upon Ray and its progeny. However, before a proper calculation can be done, we must first determine how much, if any, of the marital residence was Appellant's separate property.
 {¶ 16} In that regard, Appellant has argued that pursuant to Ray, the entire marital residence was his separate property, and that he was entitled to all of the passive appreciation of the marital residence. Appellee has argued that the marital residence was marital property, and that Appellant merely had a separate property interest in the marital residence.
 {¶ 17} The characterization of property as marital or separate is a factual inquiry, "and we review such characterization under a manifest weight of the evidence standard." Boggins v. Boggins, 9th Dist. No. 3246-M, 2002-Ohio-3183, at ¶ 5, citing Boreman v. Boreman, 9th Dist. No 01CA0034, 2002-Ohio-2320, ¶ 7-8. This Court must affirm the trial court's determination as to the nature of the property as either marital or separate if such determination is supported by competent, credible evidence. Boreman at ¶ 7.
 {¶ 18} Furthermore, this Court notes that "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "The party seeking to have the commingled property deemed separate has the burden of proof, by a preponderance of the evidence, to trace the asset to his or her separate property." Hirt v. Hirt, 9th Dist. No. 03CA0110-M, 2004-Ohio-4318, at ¶ 19, citing West v. West, 9th Dist. No. 01CA0045, 2002-Ohio-1118, at ¶¶ 11-12. The inquiry, then, has become whether the separate property is traceable. Wheeler v. Wheeler (Dec. 12, 2001), 9th Dist. No. 3188-M.
 {¶ 19} Our review of the record reveals that Appellant testified to the following at trial. He purchased the marital residence four months prior to his marriage to Appellee. Appellant paid $5,000 toward the down-payment of the property; his brother paid $10,000 toward the down-payment and his father paid $12,385.34 toward the down-payment. After the marriage, marital funds were used to repay Appellant's brother $10,000 of the down-payment. His father was never repaid the $12,385.34 down-payment. Approximately one year after the date of marriage, his brother and father executed a deed wherein each transferred his interest in the marital residence to Appellant and Appellee.
 {¶ 20} When asked about the ownership of the marital residence, Appellant testified that Appellee was on the deed to the marital residence. He further testified that he considered his separate property to consist of his collection of beer steins, his bedroom furniture, and his collection of "miniature alcohols." He did not claim the marital residence, his $5,000 down-payment when he purchased the marital residence, or any passive appreciation that resulted from his separate property investment in the marital residence as separate property to the trial court.
 {¶ 21} Appellee testified at trial to the following regarding the marital residence. Marital funds were used to repay Appellant's brother $10,000 for his down-payment on the marital residence. Marital funds were also used to repay Appellant's father $10,000 of his $12,385.34 down-payment on the marital residence. As a result of the payment to Appellant's father and brother, the brother and father executed a deed wherein they transferred their interests in the marital residence to Appellant and Appellee.
 {¶ 22} Appellant's father and mother testified at trial and testified that the father was never repaid any portion of the $12,385.34 down-payment on the marital residence. They did testify that money was paid to them from Appellant and Appellee in satisfaction of other debts, but the money was not in relation to the marital residence.
 {¶ 23} The trial court determined that, based upon the evidence and testimony presented at trial, $20,000 in marital funds was used to repay Appellant's father and brother their portion of the down-payment of the marital residence. Although Appellant has disputed the trial court's finding that marital funds were used to repay Appellant's father, we take note that "[t]he evaluation of evidence and assessment of credibility are primarily for the trier of fact." Slyder v. Slyder, 9th Dist. No. 22392, 2005-Ohio-3105, at ¶ 13, citing State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Therefore, this Court affords the trial court's findings of fact every reasonable presumption. See, Slyder,
supra, citing Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19.
 {¶ 24} The deed executed from Appellant's brother and father, as well as the testimony that marital funds were used to purchase a marital interest in the property convinces us that the marital residence was not entirely Appellant's separate property. However, that same evidence does convince us that Appellant owned a separate interest in the marital residence based upon his investment of $5,000 in separate property, and that this separate property investment entitled him to a proportional share of the passive appreciation on the marital residence. R.C.3105.171(A)(6)(iii); see, also, Zimon v. Zimon, 9th Dist. No. 04CA0034-M, 2005-Ohio-271, at ¶ 24.
 {¶ 25} This Court was recently presented with a similar situation inZimon. In Zimon, at the time of divorce the husband claimed a separate property interest in the marital residence based upon his investment of separate assets toward the down-payment of the marital residence. Id. at ¶ 15. The marital residence was purchased five months after the marriage. Id. at ¶ 2. In resolving the issues presented in Zimon, this Court concluded that the husband's separate property investment constituted 21.4% of the total investment in the property. Id. at ¶ 24. Relying upon Ray, we concluded that the husband's separate property allocation should represent an equivalent portion, or 21.4%, of the net equity in the marital residence at the time of divorce. Zimon at ¶ 26.
 {¶ 26} In the instant matter, evidence presented at trial indicates that the total investment in the marital residence was $41,726.06, and that Appellant paid $5,000 in separate property towards the purchase of the marital residence four months prior to the marriage. Thus 11% of the total investment in the marital residence was Appellant's separate property.[1] The trial court also found that the fair market value of the marital residence was $135,000, and that $73,659.28 was left outstanding on the mortgage of the marital residence at the time of divorce. Deducting the mortgage balance from the fair market value of the marital residence, the trial court determined that the marital residence had a net equity of $61,340.72 at the time of divorce. Thus 11% of the net equity in the marital residence, or $6,747.48 is Appellant's separate property. See, Zimon at ¶ 26. Once Appellant's separate equity is deducted from the net equity, $54,593.24 in net equity remains. The remaining net equity should be divided equally between Appellant and Appellee, resulting in each receiving $27,296.62.
 {¶ 27} In sum, Appellant is entitled to $34,044.10 from the net equity of the marital residence, and Appellee is entitled to $27,296.62 from the net equity of the marital residence.
 {¶ 28} We realize that there has been a change in position regarding this Court's treatment of separate property interests in the marital residence at the time of divorce. See, Nine, Ray, Sterbenz, Zimon.
Pursuant to Nine, a spouse's separate property investment was essentially refunded at the time of divorce. Nine, at 10. Following the refund, proportional shares of passive appreciation were distributed to each spouse. Id. By refunding the separate property to the purchasing spouse, the spouse was essentially insulated from loss in the net equity in the marital residence, resulting in what we view as an inequitable distribution to the purchasing spouse.
 {¶ 29} Nine was overruled by Ray. We understand that one could reasonably interpret our decision in Ray to stand for the proposition that a home purchased just prior to marriage would lead to a property distribution at the time of divorce finding that the marital residence was entirely the separate property of the purchasing spouse. Although such a reading could be statutorily correct under some facts and circumstances, one must always be mindful of the strong equitable powers of the trial court in matters of property distribution. R.C. 3105.171(B). One must also be mindful of the strong presumption that a marital residence is marital property, thus a spouse seeking to have property declared separate property must prove as much by a preponderance of the evidence. See, Hirt, supra; West, supra. Finally, Ohio has long recognized the act of an inter vivos gift, which often comes into play in situations of divorce and a claim of a separate property interest in the marital residence. See, Bolles v. Toledo Trust Co. (1936), 132 Ohio St. 21, at paragraph one of the syllabus.
 {¶ 30} In both Zimon and the case at bar, separate funds were used to purchase the marital residence. Therefore, as in Zimon, Appellant as the contributing spouse is entitled to a pro rata share of the passive appreciation of the marital residence. Zimon at ¶ 26. Under a Zimon
calculation, neither spouse is insulated from a loss in the net equity of the marital residence. As a result, both spouses enjoy their equitable share of a gain in the net equity of the marital residence. We believe that such a calculation not only treats the parties equitably, but also results in each party realizing their fair share of either a gain or loss of net equity in the marital residence.
 {¶ 31} In sum, we conclude that the trial court erred when it concluded that $3,530.64 of the passive appreciation of the marital residence was Appellant's separate property.
 {¶ 32} Appellant's first assignment of error has merit.
 Assignment of Error Number Two
"The trial court erred and committed an abuse of discretion in the division of marital property and debts when, against the manifest weight of the evidence, it assigned the responsibility to pay the Levin furniture debt to appellant."
 {¶ 33} In his second assignment of error, Appellant has argued that the trial court erred when it allocated a debt to Levin Furniture to him rather than Appellee. Specifically, Appellant has argued that even though the allocation of the Levin Furniture debt was part of an off-set of debts and assets of the marriage, such off-set was inequitable and constituted an abuse of discretion. We disagree.
 {¶ 34} The Supreme Court of Ohio has previously held that "* * * flat rules have no place in determining a property division." Briganti v.Briganti (1984), 9 Ohio St.3d 220, 221, citing Cherry v. Cherry (1981),66 Ohio St. 2d 348, 356; see, also, Berish v. Berish (1982),69 Ohio St. 2d 318, 320; Koegel v. Koegel (1982), 69 Ohio St. 2d 355, 357;Blakemore, 5 Ohio St.3d at 218. "A trial court must have discretion to do what is equitable upon the facts and circumstances of each case."Cherry, 66 Ohio St.2d at 355; Berish, 69 Ohio St.2d at 320; Koegel,69 Ohio St.2d at 357; Blakemore, 5 Ohio St.3d at 218. This Court is, therefore, limited to determining whether, in light of the totality of the circumstances of a particular case, the trial court's debt allocation determination at the time of divorce constituted an abuse of discretion. Id. at 218-220. As discussed above, an abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Id. at 219.
 {¶ 35} Appellant has argued that the off-set effectuated by the trial court resulted in an inequitable division of the marital debt. Appellee has argued that based upon the totality of the circumstances, the trial court was well within its discretion when it effectuated the off-set.
 {¶ 36} At trial, Appellee testified that she opened the Levin account soon after she left the marital residence and commenced divorce proceedings against Appellant. She further testified that she had custody of T.V., that Appellant had kept possession of all of the furniture in the marital residence, and that in order to provide adequately for herself and T.V., she had no choice but purchase furniture for her new residence.
 {¶ 37} Furthermore, the record reveals that when it divided the marital debts and assets, the trial court stated that "[t]o equalize the property division, including the debt division, the parties' retirements assets shall be divided as follows." It then allocated approximately $6,400 in marital debt to Appellant and $6,300 in marital debt to Appellee. Finding that all of the retirement funds owned by each party accrued during the life of the marriage, the trial court then awarded Appellant approximately $25,200 in retirement benefits derived from both his separate retirement account as well as a portion of Appellee's retirement account. Appellee was awarded approximately $30,700 from her retirement account. In sum, Appellant was allocated $6,400 in debt and $25,200 in retirement assets for a net award of $18,800; Appellee was allocated $6,300 in debt and $30,700 in retirement assets for a net award of $24,400. Thus it is clear that when looking solely at the marital debts and the allocation of retirement accounts, Appellee was awarded $5,600 more than Appellant.
 {¶ 38} This Court notes that Ohio law requires the trial court to divide marital and separate property equitably between the parties. R.C.3105.171(B). In most cases, this requires the court to divide the marital property equally. R.C. 3105.171(C)(1). However, if an equal division would produce an inequitable result, the court must divide the property in a way that the court determines to be equitable. Id. When dividing marital property, the trial court shall consider all relevant factors, including but not limited to those set forth in R.C. 3105.171(F). Elliott v.Elliott, 2004-Ohio-3625, at ¶¶ 11-12. Pursuant to R.C. 3105.171(F), the trial court shall consider, among other things, "[t]he assets and liabilities of the spouses" as well as "[a]ny other factor that the court expressly finds to be relevant and equitable." R.C. 3105.171(F)(2) 
(9).
 {¶ 39} In the instant matter, in addition to the distribution of marital debts and assets, the trial court found that Appellant had a college education yet was voluntarily unemployed. It also found that during the pendancy of the divorce, Appellee paid the mortgage on the marital residence as well as the rent for her apartment. Appellee also had been paying the vast majority of the couple's marital obligations as well as all of Appellant's living expenses during the pendancy of the divorce. Thus she clearly had been supporting both households for at least 18 months.
 {¶ 40} Based upon the totality of the circumstances as discussed above, we conclude that the trial court did not abuse its discretion when it ordered Appellant to pay the Levin account as a set-off of marital debts and retirement assets at the time of divorce.
 {¶ 41} Appellant's second assignment of error lacks merit.
 Assignment of Error Number Three
"The trial court erred and committed an abuse of discretion in its determination of spousal support by considering in its determination annual income of $40,000 which was improperly imputed to the appellant by the trial court."
 Assignment of Error Number Four
"The trial court erred and committed an abuse of discretion in its determination of child support by considering in its determination annual income of $40,000 which was improperly imputed to the appellant by the trial court."
 {¶ 42} Appellant's third and fourth assignments of error attack the trial court's decision to impute him with a $40,000 annual income for purposes of child support and spousal support. Specifically, Appellant has argued that the trial court erred when it imputed him with a $40,000 annual income because he was unemployed at the time of trial. We disagree.
 {¶ 43} It is well settled that the trial court is vested with broad discretion over matters of child support and spousal support. Poitingerv. Poitinger, 9th Dist. No. 22240, 2005-Ohio-2680, at ¶ 7. As a result, this Court will not disturb a trial court's decision regarding child and spousal support obligations absent an abuse of discretion. Pauly v. Pauly
(1997), 80 Ohio St.3d 386, 390, citing Booth v. Booth (1989),44 Ohio St.3d 142, 144. As discussed above, an abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore,5 Ohio St.3d at 219.
 {¶ 44} Appellant has argued that the trial court abused its discretion when it imputed an annual income of $40,000 for child support and spousal support purposes because there was no evidence to support such an imputation. As a result of this imputation, Appellant's argument continues, Appellee's spousal support obligation to him is too low and his child support obligation for T.V. is too high. In response, Appellee has argued that the trial complied with the relevant statutes governing imputation of income, and that Appellant himself testified that his annual income should be approximately $40,000 and even consented on the record to the trial court's decision to impute him with an annual income of $40,000.
Spousal Support
 {¶ 45} When determining spousal support, the trial court must make a factual determination as to the income of each spouse. R.C.3105.18(C)(1)(a). The trial court must also consider the income earning potential of each spouse. R.C. 3105.18(C)(1)(b). Such determinations are findings of fact, and this Court will not reverse the trial court's findings of fact if the findings are supported by some competent, credible evidence in the record. Jaroch v. Madalin, 9th Dist. No. 21681, 2004-Ohio-1982, at ¶ 8, quoting Huff v. Huff, 9th Dist. No. 20934, 2003-Ohio-1304, at ¶ 22.
 {¶ 46} Our review of the record reveals that during Appellant's testimony, in response to questions posed to him on direct examination, Appellant stated that his income should be between $40,000 and $50,000 per year. Appellant also testified that he held a college degree in chemistry and had worked for several years during the marriage at which time he had earned approximately $35,000. Finally, he testified that he was voluntarily unemployed so that he could attend massotherapy school.
 {¶ 47} We find Appellant's sworn testimony regarding his income earning potential competent, credible, evidence to support the trial court's decision to impute $40,000 in annual income to him for spousal support purposes. Thus we reject Appellant's argument that the trial court abused its discretion when it imputed the income to him.
 {¶ 48} Appellant's third assignment of error lacks merit.
Child Support
 {¶ 49} When determining a parent's child support obligation, the trial court must determine the parent's income. R.C. 3119.023. Pursuant to R.C. 3119.01(C), income for child support purposes is defined to include "any potential income of the parent." R.C. 3119.01(C)(5)(6). Potential income includes "imputed income that the court * * * determines the parent would have earned if fully employed" based upon the criteria articulated in R.C. 3119.01(C)(11)(a)(i)-(x). Pursuant to R.C.3119.01(C)(11)(a), when imputing income to a parent, the trial court must consider:
"(i) The parent's prior employment experience:
"(ii) The parent's education;
"(iii) The parent's physical and mental disabilities, if any;
"(iv) The availability of employment in the geographic area in which the parent resides;
"(v) The prevailing wage and salary levels in the geographic area in which the parent resides;
"(vi) The parent's special skills and training;
"(vii) Whether there is evidence that the parent has the ability to earn the imputed income;
"(viii) The age and special needs of the child for whom child support is being calculated under this section;
"(ix) The parent's increased earning capacity because of experience;
"(x) Any other relevant factor."
 {¶ 50} We again turn to Appellant's sworn testimony at trial. In addition to the previously quoted testimony, Appellant testified that he understood that the trial court would impute an annual income to him in order to determine his child support obligation. Appellant consented to the same.
 {¶ 51} We find Appellant's sworn testimony regarding his income earning potential competent, credible, evidence to support the trial court's decision to impute $40,000 in annual income to him for child support purposes. Thus we reject Appellant's argument that the trial court abused its discretion when it imputed the income to him.
 {¶ 52} Appellant's fourth assignment of error lacks merit.
 Assignment of Error Number Five
"The trial court erred and committed an abuse of discretion in the finding that a shared parenting plan is not in the best interest of the minor child."
 {¶ 53} In his fifth assignment of error, Appellant has argued that the trial court erred when it failed to order a shared parenting plan of T.V. Specifically, Appellant has argued that trial court improperly focused on the problems that existed in the relationship between Appellant and Appellee, and ignored the evidence Appellant presented in favor of a shared parenting plan. We disagree.
 {¶ 54} A trial court retains broad discretion in child custody matters, and this Court will only reverse the trial court upon a showing of an abuse of discretion. Booth, 44 Ohio St.3d at 144. As discussed above, an abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore, 5 Ohio St.3d at 219.
 {¶ 55} In child custody matters, this Court must determine `"whether the award of custody is supported by a substantial amount of credible and competent evidence.'" Lorence v. Goeller, 9th Dist. No. 04CA008556, 2005-Ohio-2678, at ¶¶ 14-15, quoting Poulton v. Poulton (Feb. 7, 2001), 9th Dist. No. 3056-M. This Court accords the trial court's decision `"the utmost respect' as the trial court is better equipped to weigh the evidence due to the knowledge gained through the observation of witnesses throughout the custody proceedings." Ives v. Ives, 9th Dist. No. 02CA008176, 2003-Ohio-3505, at ¶ 18.
 {¶ 56} Appellant has argued that the trial court's decision was arbitrary and prejudicial to Appellant because it ignored evidence that was favorable to a shared parenting plan. Appellee has argued that the trial court considered all of the evidence relevant to the question of the parenting of T.V., and its decision to reject the shared parenting plan was not an abuse of discretion.
 {¶ 57} In determining whether shared parenting is in the best interest of the children, the trial court shall consider all relevant factors, including the factors listed in R.C. 3109.04(F)(1), R.C. 3119.23, and the five factors set forth in R.C. 3109.04(F)(2). R.C. 3109.04(F)(2); see, also, Haas v. Bauer, 156 Ohio App.3d 26, 2004-Ohio-437, at ¶ 22.
 {¶ 58} R.C. 3109.04(F)(1) sets forth an extensive though non-exhaustive list of factors used to determine the best interests of the child. The wishes of the child's parents, the wishes of the child, the child's interaction with its parents and any other person who may significantly affect the child's best interest, and the mental health of all persons involved in the situation are several of the factors enumerated in the statute. R.C. 3109.04(F)(1)(a) through (e).
 {¶ 59} Pursuant to R.C. 3109.04(F)(2), the trial court must also consider any of the following relevant factors:
"(a) The ability of the parents to cooperate and make decisions jointly, with respect to the [child];
"(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
"(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
"(d) The geographic proximity of the parents to each other, as the proximity related to the practical considerations of shared parenting;
"(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem." R.C. 3109.04(F)(2).
 {¶ 60} Although it is not necessary for the trial court to set forth its analysis as to each factor listed in R.C. 3109.04(F)(2), see Buntenv. Bunten (1998), 126 Ohio App.3d 443, 447, a trial court is required to find that it considered the best interests of the children. Haas,156 Ohio App.3d at 36. "The purpose of a far-reaching inquiry is to allow the judge to make a fully informed decision on an issue as important as which parent will raise the child." Pater v. Pater (1992),63 Ohio St.3d 393, 396.
 {¶ 61} In the instant matter, numerous witnesses testified that Appellant had anger management issues. Appellant's therapist testified that in addition to his anger management issues, Appellant suffered from obsessive compulsive disorder, which was being treated with psychiatric medications. The GAL testified that he did not believe that Appellant and Appellee could implement a shared parenting plan, and that a shared parenting plan was not in the best interests of T.V.
 {¶ 62} Our review of the evidence convinces us that the trial court's determination that a shared parenting plan was not in the best interests of T.V. was supported by a substantial amount of competent, credible evidence. Although Appellant has argued that the trial court ignored the evidence he presented regarding his skill and competence as a father, the weight of the evidence and credibility of witnesses is best left to the sound discretion of the trial court. See Ives, supra. As such, the trial court did not abuse its discretion when it determined that a shared parenting plan was not in the best interests of T.V. and awarded custody of T.V. to Appellee.
 {¶ 63} Appellant's fifth assignment of error lacks merit.
 III {¶ 64} Appellant's first assignment of error is sustained. That part of the trial court's judgment awarding Appellant equity in the marital residence is vacated and judgment is entered as discussed above. Appellant's four remaining assignments of error are overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Moore, J. concurs.
Slaby, P.J. concurs in judgment only.
[1] Neither party has argued that any portion of the appreciation of the marital residence was due to active appreciation and thus marital property. R.C. 3105.171(A)(3)(a)(iii); Middendorf, 82 Ohio St.3d at 400. Active appreciation is appreciation that results from the "labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." Sterbenz at ¶ 5, quoting R.C.3105.171(A)(3)(a)(iii); see, also Middendorf, supra.