DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff/Appellant Glenda R. Hyder ("Ms. Hyder"), appeals from the trial court's judgment entry adopting Magistrate Bauder's Report and Proposed Decision ("Magistrate's Report"). We reverse in part and affirm in part.
 {¶ 2} On August 2, 2005 and August 10, 2005, this matter was heard before Magistrate Bauder on Ms. Hyder's complaint for divorce and Tom E. Hyder's ("Mr. Hyder") counterclaim for divorce. On September 22, 2005, the magistrate issued the Magistrate's Report based on the evidence presented at hearing and on stipulations of the parties entered into the record on August 19, 2005. The trial court issued its judgment entry adopting the Magistrate's Report on September 22, 2005. Ms. Hyder filed objections to the Magistrate's Report on October 5, 2005, and a memorandum in support of her objections on January 6, 2006. Mr. Hyder filed his opposition to Ms. Hyder's objections on January 26, 2006. Ms. Hyder replied to Mr. Hyder's opposition on January 31, 2006. The trial court overruled Ms. Hyder's objections and issued its final judgment entry on February 3, 2006. Ms. Hyder has timely appealed the trial court's finding and raises seven assignments of error for review.
 ASSIGNMENT OF ERROR NO. 1
"The trial court erred in determining certain Uniform Transfer to Minors Act accounts were marital property and in dividing said accounts by and between the parties in contravention of Ohio law."
 {¶ 3} Ms. Hyder asserts that the trial court erred by finding that the following accounts established in the children's names with Ms. Hyder as custodian, pursuant to the Uniform Transfers to Minor Act, were marital assets: (1) Wells Fargo account 1342 ($2,076); (2) Wells Fargo account 1306 ($2,020); (3) Janus Fund account 8719 ($7,948); (4) Janus Fund account 8720 ($4,020); (5) T. Rowe Price account 1970 ($3,783); (6) T. Rowe Price account 6680 ($1,051); (7) Wayne Savings account 0018 ($5,461); and (8) Wayne Savings account 0005 ($5,461); and HR Block account 0147 ($17,400).
 {¶ 4} The distribution of assets in a divorce proceeding is governed by R.C. 3105.171. Bucalo v. Bucalo, 9th Dist. No. 05CA0011-M, 2005-Ohio-6319, at ¶ 11. Prior to distributing any assets, the trial court is required, by statute, to determine whether property is marital or separate property. Id. See R.C.3105.171(B).
 {¶ 5} This Court has held that the "characterization of property as either marital or separate is a factual inquiry, and we review such characterization under a manifest weight of the evidence standard." (Citation omitted). Morris v. Morris, 9th Dist. No. 22778, 2006-Ohio-1560, at ¶ 23. Therefore, we must affirm the trial court's characterization if it is supported by competent, credible evidence. Bucalo, at ¶ 12. This standard of review "is highly deferential and even `some' evidence is sufficient to sustain the judgment and prevent a reversal."Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159,694 N.E.2d 989.
 {¶ 6} It should first be noted that only eight of the above-referenced accounts are at issue here. The trial court found that the HR Block account 0147 in the amount of $17,400 was non-marital property and, as such, it was not awarded or credited to either party. As to the remaining eight accounts listed above (the "UTMA Accounts"), we find that there was no competent credible evidence to support the trial court's characterization of the UTMA Accounts as marital property, subject to division.
 {¶ 7} Ohio's Uniform Transfers to Minors Act ("UTMA"), R.C.1339.33(A), states in pertinent part:
"A gift or transfer made in a manner prescribed in sections1339.31 to 1339.39 of the Revised Code, is irrevocable andconveys to the minor indefeasibly vested legal title to the security [or] money[.]" (emphasis added).
 {¶ 8} "Under the Uniform Transfers to Minors Act a transfer of [money] to a minor child by registering the security in the minor child's name will irrevocably convey to the minor an indefeasibly vested legal title to the conveyed property." LCPHolding Co. v. Taylor, 158 Ohio App.3d 546, 2004-Ohio-5324, at FN3.
 {¶ 9} It is undisputed that the UTMA Accounts were funded with marital assets and that they were proper UTMA accounts, i.e., the accounts were in the name of the children with Ms. Hyder named as custodian. Each of the Account statements so indicate and Mr. Hyder presented no evidence that the Accounts were not established as UTMA accounts pursuant to the requirements of R.C. 1339.31, et seq. As such the trial court could not legally characterize the Accounts as marital property and credit them to Ms. Hyder because a Common Pleas Court does not have authority "to make an order concerning the custodian of funds which are solely the property of the minor children of the marriage, and in which the parents, who are the only parties to the litigation, have absolutely no property interest." Ramusv. Ramus (Aug. 19, 1976), 8th Dist. No. 34965, at 3.
 {¶ 10} The Court notes that Mr. Hyder asserts that he was unaware of the establishment of the Accounts. However, Mr. Hyder acknowledges that it was the intent of the parties to put money aside for the children's education. He was simply unaware of the type of accounts being used to accomplish that purpose. While Mr. Hyder implies that Ms. Hyder's use of the UTMA statute to accomplish this purpose was financial misconduct pursuant to R.C.3105.171(E)(3), there was no evidence of such conduct before the trial court and/or other evidence that would allow the trial court to ignore the clear and unambiguous language of R.C.1339.33 and the case law supporting it.
 {¶ 11} We find that the trial court's characterization of the UTMA Accounts as marital property and the distribution of these accounts to the parties to be against the manifest weight of the evidence and contrary to Ohio law. Accordingly, Ms. Hyder's first assignment of error is sustained. We reverse and remand back to the trial court for proceedings consistent with this opinion.
 ASSIGNMENT OF ERROR NO. 2
"The trial court erred in determining the First Knox checking account #0906 had a value of $47,325 and the Fair Finance CD #78176 had a fair market value of $20,000 and in dividing those as marital property."
 {¶ 12} Ms. Hyder asserts that the court erred (1) by characterizing the assets of the tax business operated by Ms. Hyder and her father as marital property; and (2) in determining the value of those assets as of June 2005. The assets were determined to be the First Knox checking account #0906 in the amount of $47,325 and the Fair Finance CD #78176 in the amount of $20,000.
 {¶ 13} As pertinent to our review of the trial court's characterization of property as marital property, the manifest weight of the evidence standard has been discussed in the first assignment of error
 {¶ 14} We review a trial court's determination of valuation dates for an abuse of discretion. White v. White (Feb. 18, 1998), 9th Dist. No. 18275, at 1. An abuse of discretion is more than an error of law or judgment, but rather, it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Under this standard of review, an appellate court may not merely substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621, 694 N.E.2d 748.
 {¶ 15} It is undisputed that the First Knox checking account and the Fair Finance CD are assets of Ms. Hyder's tax business. Ms. Hyder's father testified that the tax business belongs to Ms. Hyder. R.C. 3105.171(A)(3)(a)(i) defines marital property as "[a]ll real and personal property that currently is owned by either or both of the spouses[.]" The trial court's characterization of the assets of the tax business as marital property and subject to division pursuant to R.C. 3150.171(B) is supported by competent credible evidence.
 {¶ 16} The trial court credited Ms. Hyder with $67,324 representing the assets (checking account and CD) of the tax business. Ms. Hyder disputes this figure. She acknowledges that on August 19, 2005, the parties stipulated that the value of the Fort Knox account had been $67,324 as of June of 2005. However, Ms. Hyder asserts that subsequent to that date, she spent $11,000 of this money on business expenses and invested $20,000 in a CD at Fair Finance to cover 2007 start up expenses of the tax business. This left a balance in the checking account of $36,600 as of July, 2005. Ms. Hyder asserts that if indeed the Fort Knox account was a marital asset subject to division, she should only be credited with the current balance of $36,600 less business expenses of $8,000 to $9,000 she will incur prior to the end of the year.
 {¶ 17} R.C. 3105.171 sets forth how a trial court should determine the dates of the marriage for property distribution purposes and states that "during the marriage" means whichever of the following is applicable:
"(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
"(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considersequitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court." R.C.3105.171(A)(2)(a) and (b) (emphasis added).
 {¶ 18} This statute provides the court with broad discretion to decide what period of time constitutes "during the marriage."Lentz v. Lentz, 8th Dist. No. 86643, 2006-Ohio-3168, at ¶ 19. "The determination as to when to apply a valuation date other than the actual date of divorce is within the discretion of the trial court and cannot be disturbed on appeal absent a demonstration of an abuse of discretion." Id., quoting Gullia v.Gullia (1994), 93 Ohio App.3d 653, 666, 639 N.E.2d 822.
 {¶ 19} Here the court chose the value in the Fort Knox Account as of June 2005 of $67,324, as set forth in the stipulations. Although Ms. Hyder testified that she spent $11,000 after June 2005 on business expenses as well as invested $20,000 towards 2007 business expenses, the expenses were never authenticated and/or challenged at trial to determine their propriety and the $20,000 CD remains a tax business asset regardless of its form. Accordingly, given that the last value the parties agreed upon was $67,324, which was the value approximately six weeks prior to the divorce hearing, we find that the trial court's valuation of the Fort Knox account and Fair Finance CD was not unreasonable, arbitrary or unconscionable. Ms. Hyder's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 3
"The trial court erred in treating [Ms. Hyder's] income as both income and property subject to a property distribution."
 {¶ 20} Ms. Hyder asserts that the trial court erred in finding that she earned $45,000 per year in income, which money was then held in the Fort Knox account while also counting the Fort Knox account balance ($47,325) as marital property which was credited to her.
 {¶ 21} We review the trial court's determination of spousal support and child support, for which the income figure is relevant, under an abuse of discretion standard. Brubaker v.Brubaker, 9th Dist. No. 22821, 2006-Ohio-1035, at ¶ 7; Kellerv. Keller, 9th Dist. No. 04CA0084, 2005-Ohio-3302, at ¶ 7.
 {¶ 22} As set forth above, the tax business is marital property and subject to distribution. Thus, the trial court is required to set a value for that tax business for distribution purposes. Although both parties had opinions as to value, neither party presented expert testimony on this issue. Accordingly, the trial court determined that the value of the tax business was the value of its assets, or the cash on hand, because the liquid assets are what Ms. Hyder would have at her disposal should she close the business. Specifically, the trial court stated that the property division of the tax business would include "all assets and business furniture as well as the First-Knox National Bank checking account number 0906 and the Fair Finance CD number 78176." The trial court found the total value of the tax business to be the balance of the checking and CD accounts, or $67,325. This valuation method is reasonable, especially given that there was no other evidence as to the value of the assets of the tax business except for the lay testimony of the parties.
 {¶ 23} The parties stipulated that Ms. Hyder's income is $45,000 per year. Ms. Hyder's income figure was solely used to determine child support and/or spousal support. It was a number inserted into a formula or on a worksheet. In this context, it does not represent a tangible asset or marital property subject to division. That the source of Ms. Hyder's income came from an account that is marital property does not change the character of the marital property or negate the fact that the parties stipulated to the fact that Ms. Hyder makes $45,000 per year. Accordingly, we cannot find that the trial court abused its discretion in distributing the First Knox bank account as a marital asset and using the stipulated figure of $45,000 as Ms. Hyder's income (paid from the First Knox bank account) to determine spousal and child support. Ms. Hyder's third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 4
"The trial court erred in failing to consider the $10,000 worth of income [Mr.] Hyder received during the pendency of this action in dividing marital assets."
 {¶ 24} Ms. Hyder asserts that the trial court erred by failing to consider and allocate the $10,000 Mr. Hyder earned from the Laundromat business as a marital asset.
 {¶ 25} In a divorce proceeding, marital property is to be divided equally, unless that division would be inequitable. R.C.3105.171(C)(1). Burner v. Burner (Oct. 18, 2000), 9th Dist. No. 19903, at 3. In reviewing the trial court's findings, we presume that the trial court considered the relevant statutory factors. Id.; Carpenter v. Carpenter (1988), 61 Ohio App.3d 584, 588,573 N.E.2d 698. We will reverse a property division only for an abuse of discretion by the trial court. Id.; Verplatse v.Verplatse (1984), 17 Ohio App.3d 99, 102, 477 N.E.2d 648. Furthermore, the property division is to be reviewed in the context of the entire award. James v. James (1995),101 Ohio App.3d 668, 680, 656 N.E.2d 399.
 {¶ 26} The parties stipulated that they jointly owned the laundromat business. Thus, it is undisputed that the laundromat business is marital property. The parties also stipulated that the fair market value of the laundromat business was $120,000 and that there was a National City Bank loan on the laundromat of $21,574. Thus, the net value of the laundromat business was found to be $98,426. The business was awarded to Mr. Hyder and he was credited with its value. This was equitable and not an abuse of discretion given Mr. Hyder's limited ability to earn income, the fact that Ms. Hyder received the tax business and in the context of the totality of the property division.
 {¶ 27} Regarding Ms. Hyder's argument that she is entitled to one half of Mr. Hyder's $10,000 income from the laundromat business, as with assignment of error four, Ms. Hyder confuses the use of an income figure with the use of a value attributed to marital property. The $10,000 which Ms. Hyder asserts was erroneously undivided and given free and clear to Mr. Hyder was simply income to Mr. Hyder and was included in the child support and spousal support calculations as income to Mr. Hyder. Mr. Hyder's income has nothing to do with the value of the business, which was considered marital property and distributed equitably as discussed above. The trial court did not abuse its discretion in failing to include $10,000 of Mr. Hyder's income as a marital asset. Ms. Hyder's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 5
"The trial court committed reversible error in computing child support."
 {¶ 28} Ms. Hyder asserts that the trial court erred in calculating child support when it failed to adjust Mr. Hyder's gross income upward to reflect the real value of that portion of Mr. Hyder's income that is tax free ($27,093).
 {¶ 29} As noted above, we review the trial court's determination of child support under an abuse of discretion standard. Brubaker at ¶ 7.
 {¶ 30} Although Ms. Hyder argues that Mr. Hyder's income should be adjusted to reflect its real value, there is no support for this proposition in Ohio law. Ohio's child support law is based upon a gross income model. "Income" is defined as the gross income of the parent. R.C. 3119.01(C)(5). "Gross Income" is defined as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income istaxable[.]" R.C. 3119.01(C)(7) (emphasis added). There is no support in Ohio law for "goosing up" non-taxable income to reflect its "real" value and, in fact, the statute expressly discusses non-taxable income.
 {¶ 31} "R.C. 3119.23 provides a list of statutory criteria a trial court may consider when determining whether to deviate from the child support schedule." Julian v. Julian, 9th Dist. No. 21616, 2004-Ohio-1430, at ¶ 7 (emphasis added). That list includes "the amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents." R.C. 3119.23(I). However, the court is not required to consider these factors and we cannot say that the trial court's decision not to deviate upward from the guidelines based on the fact that a portion of Mr. Hyder's income was tax free was an abuse of discretion under the facts of this case.
 {¶ 32} It is undisputed that the parties' incomes are substantially similar ($45,000 for Ms. Hyder versus $44,182 for Mr. Hyder). It is also undisputed that the income from the laundromat attributed to Mr. Hyder is uncertain and that his deferred compensation income from the College of Wooster ($7,122) will terminate once the account balance of $24,662 is depleted. Finally, the parties' youngest child is over eighteen and was scheduled to have graduated from high school at the end of the 2006 school year.
 {¶ 33} Given the clear dictates of the statute and the circumstances of this case, the trial court did not abuse its discretion in finding the non-taxable portion of Mr. Hyder's income to be $27,093 and declining to deviate upward from the child support guidelines based on that income's non-taxable nature. Ms Hyder's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 6
"The trial court erred regarding the evaluation and treatment of [Mr.] Hyder's Ohio Police and Fireman's Pension Fund."
 {¶ 34} Ms. Hyder asserts that the trial court erred in not finding the full amount of Mr. Hyder's Ohio Police and Fireman's Pension Fund ("OFPPF") ($533,000) to be a marital asset subject to distribution. Ms. Hyder asserts that present value of the monthly disability payments from the OFPPF should not be considered income replacement as Mr. Hyder can and has worked elsewhere earning income. We disagree.
 {¶ 35} As noted above, we review the court's characterization of property as marital or separate property under the manifest weight of the evidence standard. Morris.
 {¶ 36} Marital property, subject to division, includes "[a]ll real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage." R.C.3105.171(A)(3)(a)(i).
 {¶ 37} Disability benefits are income, rather than a marital asset. Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 179,559 N.E.2d 1292; Koba v. Koba (Dec. 19, 1996), 8th Dist. No. 70570, at 3. Disability benefits are intended to be income replacement, "unless they are accepted in lieu of old-age retirement pay."Bauser v. Bauser (1997), 118 Ohio App.3d 831, 835,694 N.E.2d 136. "Disability benefits are not marital property unless `they are accepted by the retiree in lieu of retirement pay, [in which case] they are marital property to the extent that retirement pay value is included therein.'" Elsass v. Elsass (Dec. 29, 1993), 2nd Dist. Nos. 93-CA-0005, 93-CA-0016, at 5.
 {¶ 38} Ms. Hyder presented evidence on this issue at the hearing in the form of the expert testimony of David Kelley. Mr. Kelley testified that the OFPPF had a total present value of $533,000. Mr. Kelley then divided the total value of $533,000 into two components, representing the present values of Mr. Hyder's pension ($281,446) and disability benefits ($251,863). The value of Mr. Hyder's pension and the fact that it was a marital asset was undisputed. There was some evidence derived during the hearing that demonstrates Mr. Hyder's disability payments do not completely replace his income, as it is undisputed that he continues to earn a minimal income. However, there was no evidence at trial that the disability benefits were accepted by Mr. Hyder in lieu of old-age retirement pay. In fact, Mr. Hyder continues to work. That his disability payments are not reduced by the amount of income is a function of the terms of the OFPPF and not a question of law. The characterization of Mr. Hyder's disability benefits as income rather than marital property subject to division was supported by competent credible evidence and thus was not against the manifest weight of the evidence. Defendant's sixth assignment of error is overruled. Court of Appeals of Ohio, Ninth Judicial District
 ASSIGNMENT OF ERROR NO. 7
"The trial court committed reversible error and its decision constitutes an abuse of discretion in the totality of property determination and distribution herein."
 {¶ 39} Ms. Hyder asserts that the trial court made several errors of judgment as set forth in her brief, which constitute an abuse of discretion. We have already decided the specific alleged errors of judgment, which Ms. Hyder appealed, in our discussion above. Notwithstanding that discussion, it is apparent that the trial court's judgment entry is either incorrect or, at a minimum unclear, as to the distribution of the OFPPF as relative to the total property distribution. While the parties assert that the trial court divided the entire OFPPF of $533,000 into two components representing Mr. Hyder's disability benefits and pension benefits, the latter of which was divided as marital property, the trial court's entry does not so indicate. The trial court stated: "[d]efendant shall retain his deferred compensation and his current retirement/disability benefit free and clear of any claim of plaintiff." The trial court does not address Ms. Hyder's entitlement to one half of the pension portion of the OFPPF, nor any offset for Ms. Hyder's Social Security benefits as calculated by the magistrate. Neither does the Court order a QDRO to clarify the disposition of the pension benefits.[1]
 {¶ 40} Accordingly, we sustain Ms. Hyder's seventh assignment of error and reverse and remand this matter back to the trial court for proceedings consistent with this opinion and our analysis of the disposition of the OFPPF set forth in Assignment of Error No. 6.
 {¶ 41} This matter is reversed and remanded back to the trial court for proceedings consistent with this opinion as to Assignments of Error No. 1 and 7. All other assignments of error are overruled.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Whitmore, J., Carr, J., concur.
[1] It is presumed that a QDRO was not ordered inasmuch as the trial court's judgment entry does not appear to divide the OFPPF. Thus, the absence of a QDRO does not affect the final appealable order status of the trial court's judgment entry.