DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Douglas M. Miller and Patricia A. Miller divorced after 21 years of marriage. They both filed multiple objections to the magistrate's Report and Proposed Decision, but the trial court overruled them. This Court affirms most of the trial court's judgment, but reverses in part because it incorrectly included the parties' children's custodial accounts in its division of marital property.
 FACTS {¶ 2} Mr. and Mrs. Miller married in Wayne County in 1984. At the time of trial, they were both 43 years old. Mr. Miller has a degree in chemical engineering and a master's degree in business administration. He operates a street cleaning business that the parties jointly owned. Mrs. Miller has a PhD in cell biology, but she abandoned her career to raise the parties' daughters, who were 13 and 10 years old at the time of trial. She has suffered from a rare form *Page 2 
of breast cancer that has a high mortality rate. The cancer was in remission at the time of trial, but Mrs. Miller was still within the time period during which recurrence was likely. She was also suffering from a form of bipolar disorder.
 {¶ 3} The Millers owned a number of vehicles, life insurance policies, and retirement accounts. They also had four Merrill Lynch accounts: a joint account, an individual account for Mrs. Miller, and two UTMA accounts in Mrs. Miller's name, but only as custodian for the daughters. Although the Millers married in Ohio, they lived for several years in Rhode Island. Mrs. Miller and the children moved back to Ohio in 2003, but Mr. Miller remained in Rhode Island. He subsequently purchased a house with a girlfriend.
 {¶ 4} In May 2004, Mrs. Miller filed for divorce in Rhode Island. She later dismissed that action, and, in November 2004, filed a Complaint for Divorce in Wayne County. On November 24, 2004, the magistrate issued temporary orders requiring Mr. Miller to pay $456 for child support and $3550 for spousal support directly to Mrs. Miller each month. He also directed Mr. Miller to pay Mrs. Miller $220 per week as an employee of the family business and to pay all uninsured medical, dental, and counseling expenses of Mrs. Miller or the children.
 {¶ 5} In December 2004, Mr. Miller requested review of the temporary orders. In May 2005, Mrs. Miller filed a contempt motion, alleging that Mr. Miller had not paid all of the support ordered. In October 2005, the magistrate found that Mr. Miller was not in contempt, reduced his spousal support payments to $2500 per month, and ordered the parties to split any future uninsured medical or dental expenses. His order also permitted the parties to use up to $5000 from the joint Merrill Lynch account for expert fees or evaluations.
 {¶ 6} On April 11, 2006, the magistrate issued his Report and Proposed Decision. Among the relevant parts of his decision, the magistrate determined that Mr. Miller had not been *Page 3 
permitted to use $5000 from the joint Merrill Lynch account. He determined that Mrs. Miller should continue as custodian of the children's accounts and that those accounts should not be considered marital property. He determined that, in light of the parties' ages, the disparity in their anticipated Social Security benefits should be given little weight in determining spousal support or the property division. He determined that the value of the street cleaning business was $262,000. He determined that Mr. Miller would be responsible for debt owed to a Montessori school and that a fee Mr. Miller owed to an accountant was his separate non-marital debt.
 {¶ 7} The magistrate determined that Mr. Miller's annual income was $150,000 and imputed $40,000 to Mrs. Miller for child support purposes. He declined to deviate from the child support worksheet to allow Mr. Miller transportation expenses because Mr. Miller should have anticipated those expenses when he agreed to let the children return to Ohio. The magistrate determined that Mr. Miller owed Mrs. Miller $3120 in back child support and $1075 for unpaid medical expenses. He determined that Mr. Miller had consumed $119,864 more in marital assets than Mrs. Miller. He also determined that Mr. Miller should not benefit from a professional discount Mrs. Miller's attorney had given her.
 {¶ 8} After dividing the marital property, the magistrate determined that Mr. Miller owed Mrs. Miller $61,986.50 to equalize the distribution. He also determined that Mr. Miller should pay Mrs. Miller's attorney fees and 25% of the difference in marital assets he consumed. Regarding spousal support, he determined that Mr. Miller should pay $3000 per month for 66 months and that the court should retain jurisdiction for the purposes of the amount only. Regarding child support, he determined that Mr. Miller should pay $499 per month per child. *Page 4 
 {¶ 9} On April 11, 2006, the trial court filed a Judgment Decree of Divorce, adopting the magistrate's proposed decision. Both parties filed timely objections, but on February 15, 2007, the trial court overruled them. Mrs. Miller has appealed, assigning ten errors. Mr. Miller has cross-appealed, assigning nine errors. For ease of analysis, this Court has rearranged the assignments of error.
 ADEQUACY OF TRIAL COURT'S ORDER {¶ 10} Mrs. Miller's first assignment of error is that the trial court incorrectly issued an order that was ambiguous, confusing, left issues unresolved, and failed to disentangle the relationship between the parties. She has noted that the magistrate indicated in his report that, because the three appraisers of the parties' street sweeping business "were never looking at the same financial information[,]. . . . [t]his makes the Court's determination very difficult." He also indicated that he could not understand all the evidence, that some of the exhibits were confusing, and that "there is simply not enough time to review all of the documents." She has argued that, if the evidence was confusing, the magistrate and trial court had a duty to instruct the parties to clarify it.
 {¶ 11} "In any divorce action, the starting point for a trial court's analysis is an equal division of marital assets." Neville v.Neville, 99 Ohio St. 3d 275, 2003-Ohio-3624, at ¶ 5 (citing R.C. 3105.171(C)). "[T]he court shall . . . determine what constitutes marital property and what constitutes separate property. . . . [U]pon making such a determination, the court shall divide the marital and separate property equitably between the spouses. . . ." R.C. 3105.171(B). "In order to determine what is equitable, a trial court must consider the factors set forth in R.C. 3105.171(F)."Neville, 2003-Ohio-3624, at ¶ 5. "The trial court . . . should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their *Page 5 
marriage." Hoyt v. Hoyt, 53 Ohio St. 3d 177, paragraph two of the syllabus (1990). "Since a trial court has broad discretion in the allocation of marital assets, its judgment will not be disturbed absent an abuse of discretion." Neville, 2003-Ohio-3624, at ¶ 5.
 {¶ 12} Mrs. Miller has not cited any relevant authority in support of her argument that the magistrate and trial court had a duty to instruct the parties to clarify the evidence. Although she has cited Wenger vWenger, 9th Dist. No. 05CA0057, 2006-Ohio-3330, that case only determined that, if a trial court's judgment leaves issues unresolved, it is not a final appealable order. Id. at ¶ 15. While Mrs. Miller has noted that the magistrate did not explicitly rule on her motion in limine, when a court "fails to rule upon a motion, it will be presumed that it was overruled." Georgeoff v. O'Brien, 105 Ohio App. 3d 373, 378
(1995). Mrs. Miller has not identified any items for which the magistrate failed to determine a value or any issues that the trial court left unresolved. This Court, therefore, concludes that she has failed to demonstrate any prejudice from the magistrate's comments that he did not have time to review every document and that he found some of the evidence confusing. Mrs. Miller's first assignment of error is overruled.
 INDEPENDENT REVIEW OF OBJECTIONS {¶ 13} Mrs. Miller's second assignment of error is that the trial court failed to independently review her objections to the magistrate's report. She has argued that, instead of conducting a de novo review of the facts and law, the trial court merely deferred to the decision of the magistrate.
 {¶ 14} When a trial court rules on objections to a magistrate's decision, it "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ. R. 53(D)(4)(d). *Page 6 
It "has the `authority to determine if the [magistrate's] findings of fact are sufficient to support the conclusions of law . . . [and to] come to a different legal conclusion if that conclusion is supported by the [magistrate's] findings of fact.'" Swift v. Swift, 9th Dist. No. 23642, 2008-Ohio-1055, at ¶ 7 (quoting Weitzel v. Way, 9th Dist. No. 21539, 2003-Ohio-6822, at ¶ 18).
 {¶ 15} The Ohio Supreme Court has cautioned trial courts "against the practice of adopting referee's reports as a matter of course, especially where a referee has presided over an entire trial." Hartt v.Munobe, 67 Ohio St. 3d 3, 6 (1993). "In order for the trial court to maintain its independence, it is of utmost importance that it carefully examine any report before it for errors." Normandy Place Assoc. v.Beyer, 2 Ohio St. 3d 102, 105 (1982).
 {¶ 16} There is nothing in the record to suggest that the trial court failed to conduct an independent review of the facts and law that Mrs. Miller raised in her objections. Mrs. Miller filed her objections on April 24, 2006, and the trial court did not overrule them until February 15, 2007, over nine months later. That was sufficient time for the trial court to thoroughly review each objection, even if it did not specifically address each of them in its judgment entry. See Wingard v.Wingard, 2d Dist. No. 2005-CA-09, 2005-Ohio-7066, at ¶ 19 (concluding that approximately nine months between filing of objections and trial court's overruling of them was sufficient time for the trial court to conduct a de novo review). Mrs. Miller's second assignment of error is overruled.
 CUSTODIAL ACCOUNTS {¶ 17} Mrs. Miller's third assignment of error is that the trial court incorrectly included the parties' daughters' UTMA Merrill Lynch accounts in its division of marital assets despite a stipulation by the parties that those accounts were not martial assets. She has noted that the parties had four Merrill Lynch accounts: a joint account, an individual account for Mrs. Miller, *Page 7 
and a UTMA account for each of the daughters. She was the custodian of the UTMA accounts. Mrs. Miller has argued that the magistrate misread one of her exhibits and incorrectly determined that $56,976 that was in the custodial accounts was in her individual account.
 {¶ 18} Mrs. Miller introduced an exhibit indicating there were three accounts in her name and that she was merely the custodian of two of the accounts. One of the documents showed that, as of February 22, 2006, there was $14,531 in her account, $33,110 in one of the custodial accounts, and $23,866 in the other custodial account. The total amount in all the accounts was $71,507.
 {¶ 19} In his report, the magistrate cited the document that indicated a total value of $71,507. He construed it, however, as indicating the value of Mrs. Miller's individual account and, after subtracting $2000 that he found was Mrs. Miller's separate property, determined that $69,507 was marital property, which he included in his calculation of the property division. Mrs. Miller objected, but the trial court overruled her objection.
 {¶ 20} "A custodial account held for the benefit of a child is neither marital or separate property." Wilson v. Wilson, 9th Dist. No. 95CA0089,1996 WL 411631 at *5 (July 24, 1996). The parties had stipulated that the custodial accounts were not marital property. The magistrate and trial court, however, included nearly $57,000 of custodial assets in their division of property calculation. That was incorrect. Furthermore, this Court concludes that the inclusion of such a large amount of non-marital assets in the magistrate's and trial court's determination of the property division resulted in an unreasonable division of the Millers' marital assets. Accordingly, Mrs. Miller's third assignment of error is sustained. *Page 8 
 MRS. MILLER'S INCOME {¶ 21} Mrs. Miller's sixth assignment of error is that the trial court incorrectly imputed $40,000 in income to her for purposes of child support. This Court reviews the trial court's determination of child support for an abuse of discretion. Hyder v. Hyder, 9th Dist. No. 06CA0014, 2006-Ohio-5285, at ¶ 21.
 {¶ 22} Section 3119.01(C)(5)(b) of the Ohio Revised Code provides that the income of "a parent who is unemployed or underemployed" includes "the sum of the gross income of the parent and any potential income of the parent." "Potential income" includes imputed income that the parent would have earned if she had been fully employed. R.C. 3119.01(C)(11)(a). The criteria for determining imputed income includes the parent's prior employment experience, her education, her physical and mental disabilities, the availability of employment, the prevailing wage and salary levels, her special skills and training, whether there is evidence that she has the ability to earn the imputed income, the age and special needs of the children, her increased earning capacity because of experience, and any other relevant factor. R.C. 3119.01(C)(11)(a)(i-x).
 {¶ 23} The magistrate noted that, although Mrs. Miller had suffered from cancer, she had been without a recurrence for six years. He noted that, although she had been diagnosed in February 2004 as suffering from a form of bipolar disorder, she had been responsive to treatment and that 85% of individuals with her form of the disorder can return to work in two to three years. He also noted that stress can affect the disorder and that Mrs. Miller would likely be on medication for one to two more years.
 {¶ 24} Mrs. Miller has argued that her degree is stale and that her medical conditions prevent her from returning to work. The magistrate gave considerable weight, however, to the *Page 9 
testimony of a vocational counselor who testified that, with a structured job search, Mrs. Miller could return to work immediately and find a position in the biological sciences that pays between $30,000 and $40,000 per year. While Mrs. Miller would not be a senior research associate immediately, with additional education or retraining, she could advance.
 {¶ 25} Mrs. Miller has argued that the vocational counselor did not consider her health in his report and that other experts opined she was not employable at this time. The vocational counselor testified, however, that, as long as Mrs. Miller's cancer was inactive, it did not affect her employability. He also testified that he had placed bipolar clients in the work force and that a lot of people with bipolar disorder can work.
 {¶ 26} Mrs. Miller has also argued that the magistrate's report was inconsistent, recommending that income be imputed to her immediately, but later stating that "[Mrs. Miller] is capable of being employed although maybe not at the present." That statement was made in regard to the magistrate's spousal support determination and merely reflected his uncertainty in determining how soon Mrs. Miller would actually be able to find employment. This Court, therefore, concludes that the trial court did not abuse its discretion in imputing $40,000 in income to Mrs. Miller for purposes of child support. Her sixth assignment of error is overruled.
 MR. MILLER'S INCOME {¶ 27} Mr. Miller's second assignment of error is that the magistrate incorrectly determined that his income was $150,000 for purposes of child support. He has argued that the court incorrectly relied on statements from his trial brief rather than the evidence presented. He has also argued that the trial court should have acknowledged that he only took some of the shareholder distributions that he did in order to satisfy his temporary support obligations and that the business had to borrow money to pay those distributions. *Page 10 
 {¶ 28} In his trial brief, Mr. Miller stated that "[t]he evidence in this case will show that [his] income is approximately $150,000 per year." He stressed that it was income, not cash flow, that the court had to consider and stated again that he was "100% confident that when the Court has an opportunity to review the evidence in this case, it will determine that his income is . . . $150,000."
 {¶ 29} Mr. Miller has not cited any case law in support of his argument that the trial court was not allowed to rely on the statements he made in his trial brief. In addition, the evidence supports that finding. The magistrate found that, in 2004, Mr. Miller's salary was $49,000 and that he had shareholder distributions of over $91,000 for a total of $141,053. The magistrate further found that Mr. Miller's 2005 salary increased to $65,440 and that the family business continued to pay some of his household expenses. Although Mr. Miller claimed that his shareholder distributions were only $67,000 in 2005, the magistrate may not have found his testimony credible. See Getter v. Getter,90 Ohio App. 3d 1, 9 (1993) (noting that the credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact to determine). If Mr. Miller's shareholder distributions remained equal from 2004 to 2005, the combined total of his salary and shareholder distributions would have exceeded $150,000.
 {¶ 30} Mr. Miller has also failed to establish that his business had to borrow money so that he could meet his temporary support obligations. Mr. Miller did not submit a personal budget indicating that the only way he could meet his temporary support obligations was to take additional distributions from the business. Accordingly, this Court concludes that the trial court's determination that Mr. Miller's income was $150,000 for purposes of child support was supported by the evidence. Mr. Miller's second assignment of error is overruled. *Page 11 
 CHILD SUPPORT DEVIATION {¶ 31} Mr. Miller's fourth assignment of error is that the trial court incorrectly determined his child support obligation. He has argued that it miscalculated his income, failed to consider Mrs. Miller's interest in two hog farming operations, and improperly denied him a deviation based on the traveling expenses he will incur to exercise his parenting time.
 {¶ 32} Regarding Mr. Miller's income, this Court has already determined that the trial court did not miscalculate it for child support purposes. Regarding Mrs. Miller's interest in the hog farms, Mr. Miller has not alleged that she receives any income from those operations or identified any evidence in the record that would support such a finding.
 {¶ 33} Regarding Mr. Miller's travel expenses, Section 3119.22 of the Ohio Revised Code "allows a court to order child support in an amount that deviates from the calculation obtained from the child support schedule and applicable worksheet, if after considering the factors and criteria set forth in R.C. 3119.23, it determines (1) that the amount calculated would be unjust or inappropriate and (2) that the amount would not be in the best interest of the children." Wachter v.Wachter, 9th Dist. No. 23170, 2006-Ohio-6970, at ¶ 11 (quotingPeters v. Peters, 9th Dist. Nos. 03CA008306, 03CA008307, 2004-Ohio-2517, at ¶ 36). "[E]xtraordinary costs associated with parenting time" is one of the factors listed in Section 3119.23.
 {¶ 34} The magistrate found that Mr. Miller agreed to let Mrs. Miller and the children return to Ohio, that he "was well aware that the marriage was in trouble when that took place," and that he "should have anticipated there would be transportation expenses incurred for him to see the children." He concluded that Mr. Miller's request for deviations was "not in the children's best interest and should be denied." *Page 12 
 {¶ 35} The deviation Mr. Miller sought would have reduced the amount of support available to the children. Although the magistrate recognized that it would benefit the children if Mr. Miller continued attending counseling sessions with them, Mr. Miller did not allege, let alone establish, that he would be unable to visit them unless the court granted him a deviation. This Court, therefore, concludes that the trial court did not abuse its discretion when it concluded that deviation from the child support worksheet was not in the best interest of the children. Mr. Miller's fourth assignment of error is overruled.
 CHILD SUPPORT ARREARAGE {¶ 36} Mr. Miller's sixth assignment of error is that the trial court incorrectly determined that there was an arrearage in child support. He has argued that the court incorrectly ordered him to pay Mrs. Miller directly and that he made every payment that was ordered.
 {¶ 37} Section 3109.05(A)(2) provides that the trial court "shall include in each support order . . . a requirement that all support payments be made through the office of child support. . . ." Any child support payments that are not "made to the office of child support, or to the child support enforcement agency administering the support order . . . shall not be considered a payment of support under the support order and . . . shall be deemed to be a gift." R.C. 3121.45. "Although [R.C. 3121.45] creates a presumption that support payments not processed through a county support enforcement agency are gifts, that presumption is rebuttable." Drake v. Gozdan, 9th Dist. No. 96CA0050, 1997 WL 416471
at *3 (July 9, 1997). "Credit may be given for payments outside the CSEA when the obligor is able to present sufficient evidence that the direct payments were intended to satisfy the support obligation." Id.
 {¶ 38} In the magistrate's first temporary order, he ordered Mr. Miller to make his support payments directly to Mrs. Miller. In his second order, the magistrate noted that *Page 13 
"[t]echnically the spousal support and child support should be paid through the Support Enforcement Agency. This would be an advantage for the parties because the agency would be able to keep accurate records of payments made." He found, however, that "with her original pleadings, [Mrs. Miller] had requested the support be paid direct." He, therefore, recommended that temporary support continue to be paid directly to Mrs. Miller.
 {¶ 39} Both parties have argued that the other party requested direct payments and, therefore, should bear the burden of proving whether Mr. Miller made all of his required payments. Because the Millers mutually agreed to direct payments at a hearing on March 21, 2005, however, equity favors neither side. The magistrate reviewed the exhibits regarding Mr. Miller's temporary support payments and concluded that Mrs. Miller's were "more orderly" and, therefore, "more credible." That finding is supported by the record. Mr. Miller's sixth assignment of error is overruled.
 SPOUSAL SUPPORT {¶ 40} Mrs. Miller has argued, and this Court will consider, her fourth and fifth assignments of error together. Her fourth assignment of error is that the trial court incorrectly refused to retain jurisdiction of the term of spousal support. Her fifth assignment of error is that the trial court incorrectly determined the rate of spousal support. This Court reviews the trial court's determination of spousal support for an abuse of discretion. Hyder v. Hyder, 9th Dist. No. 06CA0014,2006-Ohio-5285, at ¶ 21.
 {¶ 41} Section 3105.18(B) of the Ohio Revised Code provides that the court "may award reasonable spousal support to either party." Section 3105.18(C)(1) provides that the court "shall consider" a number of specific factors in determining the amount and duration of support. The listed factors include the parties' income and relative earning abilities, their ages, their physical, *Page 14 
mental, and emotional conditions, their retirement benefits, their education, their standards of living, their relative assets and liabilities, the duration of the marriage, whether there are minor children, tax consequences, and any other factors "that the court expressly finds to be relevant and equitable." R.C. 3105(C)(1)(a-n).
 {¶ 42} Regarding the rate of spousal support, Mrs. Miller has argued that the magistrate's determination was not supported by any competent evidence. According to her, even though Mr. Miller had been paying her $5000 per month in temporary support, she still had a negative cash flow. She has also argued that Mr. Miller understated his income and that the magistrate failed to account for the new expenses she would have after the divorce for education and health insurance.
 {¶ 43} Mrs. Miller is incorrect that she had received $5000 per month in temporary support since the proceedings began. Although Mr. Miller originally paid Mrs. Miller $3550 per month in temporary spousal support, the magistrate later reduced the amount to $2500. Mrs. Miller also received $220 per week from the family business and $456 per month in child support. Accordingly, at the time of trial, she was receiving less than $4000 per month in temporary support.
 {¶ 44} Mrs. Miller is also incorrect that the magistrate failed to account for her education or health insurance expenses. Regarding education expenses, because the vocational counselor whose opinion the magistrate gave considerable weight testified that Mrs. Miller could obtain immediate employment without further education, those expenses were not a necessary part of her budget. Mrs. Miller has also failed to identify any evidence in the record that established the anticipated cost of those classes. Regarding health insurance expenses, the magistrate noted that Mrs. Miller had submitted a budget of $5473. He noted that her car loan of $898 would be *Page 15 
eliminated because there were only a few payments left. He also noted that she had received a health insurance quote of $488 per month. He concluded that "[e]ven with the car payment dropping off . . . it would appear plaintiff's monthly expenses would be approximately $5000." Accordingly, the magistrate did not fail to consider Mrs. Miller's health insurance expenses in determining her spousal support.
 {¶ 45} To meet her budget, the magistrate recommended awarding Mrs. Miller $3000 per month in spousal support and approximately $1000 per month in child support. Although the magistrate noted that, "[d]ue to [Mrs. Miller's] current medical or emotional condition, imputing [$40,000] for purposes of spousal support may not be justified," he, apparently, determined that she could satisfy the remaining $1000 per month through work or social security disability benefits, which he recommended she pursue. Mrs. Miller has failed to establish that his determination was arbitrary or irrational. This Court, therefore, concludes that the trial court did not abuse its discretion when it awarded Mrs. Miller only $3000 per month in spousal support. Her fifth assignment of error is overruled.
 {¶ 46} Regarding the duration of the award, Mrs. Miller has argued that, in light of her health issues, her need for reeducation, and the fact that she is caring for two minor children, the trial court should not have limited her spousal support to 66 months and should have retained jurisdiction over that issue. Her argument, essentially, is that, if her cancer recurs, she may not be able to support herself and her children.
 {¶ 47} The magistrate determined that Mrs. Miller "is capable of being employed although maybe not at the present." He noted that Mrs. Miller's cancer was in remission and that most people who suffer from her form of bipolar disorder can return to work within a few years. He concluded that six or seven years of spousal support was appropriate, and properly took into *Page 16 
account the fact that Mr. Miller would likely have paid two years of temporary support by the time any objections were ruled on. SeeZimon v. Zimon, 9th Dist. No. 04CA0034-M, 2005-Ohio-271, at ¶ 30
(concluding that it is "inequitable to ignore the temporary support paid during the pendency of the proceeding when deciding the duration of the support award"). While recurrence of Mrs. Miller's cancer is possible, the trial court's award of 66 months of support and decision not to retain jurisdiction over the term of support was not an abuse of its discretion. Mrs. Miller's fourth assignment of error is overruled.
 CREDIT FOR TEMPORARY SUPPORT {¶ 48} Mr. Miller's fifth assignment of error is that the trial court incorrectly calculated the duration of spousal support because it failed to credit him for the months of temporary support he paid. His argument is without merit. The magistrate determined that "approximately six to seven years" of spousal support was appropriate. That was a range of 72 to 84 months. From the time the magistrate ordered Mr. Miller to pay temporary spousal support in November 2004 to the time he issued his report in April 2006, 18 months had passed. Subtracting 18 months from 84 months leaves 66 months, the period of spousal support that the magistrate recommended and that the trial court ordered Mr. Miller to pay. His fifth assignment of error is overruled.
 MEDICAL SUPPORT ARREARAGE {¶ 49} Mrs. Miller's ninth assignment of error is that the trial court incorrectly eliminated the medical support arrearages owed by Mr. Miller. She has argued that Mr. Miller owed her $8626 for uninsured medical and psychological expenses that she incurred before the magistrate modified his temporary orders. The magistrate determined that Mr. Miller did not *Page 17 
have to reimburse her for those expenses, concluding that, through his payments "in the form of salary, temporary spousal support or child support" he had "met his financial responsibility."
 {¶ 50} In his first temporary matters order, the magistrate ordered that, in addition to Mr. Miller's other support obligations, he had to pay "all uninsured medical, dental and counseling expenses pertaining to [Mrs. Miller and the children]." In his second order, he noted that Mr. Miller was "behind in these payments and that can be addressed at the final hearing." At trial, Mr. Miller stipulated that he had failed to pay Mrs. Miller $8626 for uninsured medical bills that she incurred before the second order. The magistrate concluded, however, that Mr. Miller no longer had to pay those expenses.
 {¶ 51} "[A] court has the inherent power to vacate, reverse or modify one of its own orders in a matter pendante lite, that is, until it loses jurisdiction of the cause by entering a final order. That includes the power to modify its own prior temporary support orders." Drumm v.Drumm, 2d Dist. Nos. 16631, 17115, 1999 WL 198120 at *7 (Mar. 26, 1999); but see Ostmann v. Ostmann, 168 Ohio App. 3d 59, 2006-Ohio-3617, at ¶ 42-44 (concluding that a modification that increases a party's child support obligation "should only be prospective in nature.").
 {¶ 52} Having reviewed the totality of the circumstances, the magistrate determined that, in light of what Mr. Miller had paid Mrs. Miller in salary, child support, and spousal support, she should not receive specific reimbursement for the uninsured medical expenses she had paid. That decision was not an abuse of discretion. See Preston v.Preston, 4th Dist. No. 1368, 1982 WL 3570 at *2 (Nov. 8, 1982) (concluding trial court could "forgive" an arrearage in the final divorce judgment by retroactively modifying the temporary alimony order). Mrs. Miller's ninth assignment of error is overruled. *Page 18 
 VALUE OF FAMILY BUSINESS {¶ 53} Mrs. Miller's seventh and eighth assignments of error are related and will be considered together. Her seventh assignment of error is that the trial court incorrectly established the value of the family business. Her eighth assignment of error is that the court should have granted her motion in limine seeking to exclude certain depositions concerning the value of the business.
 {¶ 54} Regarding the motion in limine, the Ohio Supreme Court has determined that, because an order granting or denying a motion in limine is interlocutory, "[a]n appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial."State v. Grubb, 28 Ohio St. 3d 199, 203 (1986) (quoting State v.Leslie, 14 Ohio App. 3d 343, 344 (1984)). In her motion, Mrs. Miller objected to the use of the deposition of the family business's accountant because he had not produced any documents in support of his testimony. She also objected to the deposition of one of the appraisers Mr. Miller hired because he, allegedly, used the same information as the accountant and also failed to provide that information to her. Mrs. Miller preserved her objections at trial.
 {¶ 55} Whether to admit or exclude otherwise admissible evidence is within the sound discretion of the trial court. See State v. Sage,31 Ohio St. 3d 173, paragraph two of the syllabus (1987). This Court will not disturb a trial court's decision to admit evidence in accordance with the Ohio Rules of Evidence, therefore, in the absence of an abuse of discretion.
 {¶ 56} Although the magistrate permitted the depositions to be introduced and discussed them in his decision, he ultimately gave more weight to the evaluation of a different appraiser, who had been paid by both parties and, therefore, appeared to be more independent. *Page 19 
Accordingly, because Mrs. Miller has failed to demonstrate that she was materially prejudiced by the introduction of the two depositions, her eighth assignment of error is overruled.
 {¶ 57} Regarding the value of the business, Mrs. Miller has argued that the magistrate overlooked the opinion of the appraiser she hired. Her argument is belied by the record. The magistrate's report discussed Mrs. Miller's appraiser's report, noted that his initial evaluation was lower, and documented his criticisms of the other appraisers' methodologies and the corrections he would have made to their appraisals.
 {¶ 58} Mrs. Miller has also argued that the magistrate was confused by the evidence and merely guessed at the correct valuation of the business. The magistrate stated that it appeared that the three appraisers were never looking at the same information, making his determination very difficult. He also stated that, because of the volume of material submitted regarding cash flow analysis, income statements, and expense statements, he could not review every line item and had to place weight on the three evaluations instead. He concluded that, "[b]ased upon all of the evidence presented and reviewing the exhibits in as much detail as understandable, . . . the value of the [Millers' family business is] $262,000."
 {¶ 59} The magistrate noted that two of the appraisers were fairly consistent and that the third appraiser gave a tentative value at one point that was close to the other two. He decided to recommend the middle value because he was "more comfortable with this analysis" and because that appraiser "had been paid by both parties and therefore would seem to be a more independent appraiser." Mrs. Miller has not identified any specific flaws in that appraisal. Accordingly, she has failed to demonstrate that the trial court's adoption of his valuation of the family business was not supported by the record. *Page 20 
 {¶ 60} Mrs. Miller has also argued that the trial court should have provided her with "security for this obligation," but has not identified the obligation to which she is referring or what security the trial court should have provided. Moreover, she has acknowledged that, if Mr. Miller fails to make any required payments, he is subject to a contempt action. Mrs. Miller has also argued that the trial court overlooked the fact that there was business debt on her Ohio residence. The magistrate, however, noted that the mortgage on the Ohio residence was used to pay down debt on the business and took its negative equity into account in determining the division of property. Mrs. Miller's seventh assignment of error is overruled.
 SOCIAL SECURITY BENEFITS {¶ 61} Mrs. Miller's tenth assignment of error is that the trial court did not properly address the disparity in the parties' social security benefits. She has argued that the magistrate made only a limited reference to the disparity and ignored credible evidence about its extent.
 {¶ 62} In Neville v. Neville, 99 Ohio St. 3d 275, 2003-Ohio-3624, at syllabus, the Ohio Supreme Court held that, "[i]n making an equitable distribution of marital property in a divorce proceeding, a trial court may consider the parties' future Social Security benefits in relation to all marital assets." In his report, the magistrate noted that one of Mrs. Miller's expert witnesses had testified that there was a disparity in the Millers' social security benefits. He also noted that the expert's calculation did not factor in Mrs. Miller's health issues. Nevertheless, in arriving at his spousal support and division of property recommendation, he determined that the disparity should only be "given some weight but not significant weight."
 {¶ 63} Mrs. Miller has argued that, because of her health issues and because the magistrate found that Mr. Miller makes much more than her expert assumed, the disparity in social security benefits is actually wider than what her expert calculated. She has not indicated, *Page 21 
however, how much greater the disparity is. Without knowing the extent of the difference, this Court cannot determine whether she suffered any prejudice or whether the trial court abused its discretion in failing to give the disparity greater weight. Mrs. Miller's tenth assignment of error is overruled.
 FROZEN MERRILL LYNCH ACCOUNT {¶ 64} Mr. Miller's first assignment of error is that the trial court's division of marital assets was incorrect because it failed to take into account that he was not allowed to withdraw $5000 from the joint Merrill Lynch account. He has noted that the magistrate's temporary orders let both parties use up to $5000 from the account for expert witness evaluations or testimony, that Mrs. Miller used her $5000, and that she froze the account before he could use his $5000. He, therefore, has argued that the magistrate should have awarded him an additional $5000 to offset the $5000 that she used.
 {¶ 65} In his report, the magistrate acknowledged that Mr. Miller was unable to withdraw $5000 from the join Merrill Lynch account for litigation expenses. He recommended that the trial court "keep in mind that . . . [Mrs. Miller] was able to take her share but [Mr. Miller] was not." He accepted Mrs. Miller's testimony, however, that Mr. Miller had consumed $13,387 from the joint Merrill Lynch account, that she had only consumed $12,564 from the account, and that he had consumed a total of $119,864 more in marital assets than she had. Mr. Miller has not contested those findings on appeal.
 {¶ 66} The magistrate's failure to specifically account for the $5000 that Mr. Miller was not permitted to withdraw from the joint Merrill Lynch account was not an abuse of discretion. As previously noted, the court retained the power to modify its prior temporary support order.Drumm v. Drumm, 2d Dist. Nos. 16631, 17115, 1999 WL 198120 at *7 (Mar. 26, 1999). *Page 22 
Moreover, Mr. Miller has failed to allege that he lacked adequate funds to hire expert witnesses or identify any additional experts he would have hired if he had been permitted to use $5000 from the joint account. His first assignment of error is overruled.
 CONSUMPTION OF ASSETS {¶ 67} Mr. Miller's third assignment of error is that the trial court unequally divided the marital assets based on its incorrect determination that he had dissipated assets. He has argued that he was required to maintain two households and only liquidated assets in order to meet his obligations. He has also argued that he did not waste money on gambling junkets or personal items, but only spent money on living expenses.
 {¶ 68} Mr. Miller has failed to identify, and this Court has not located, the place in the magistrate's or trial court's decision that they determined that he dissipated assets. While the magistrate found that Mr. Miller had consumed more marital assets than Mrs. Miller, he did not indicate that the amount was excessive or wasteful. In fact, he noted that "much of the consumption was for attorney fees and litigation expense for the parties. . . ." Accordingly, Mr. Miller's argument is not supported by the record.
 {¶ 69} Mr. Miller has also argued that the magistrate used an incorrect multiplier in determining how much of the difference in consumed assets to award Mrs. Miller in order to equalize the property distribution. His argument is without merit. The magistrate noted that, in order to equalize the parties' consumption, Mr. Miller would have to pay half of the difference. He recognized, however, that much of the consumption had gone for attorney fees and litigation expenses and determined that Mr. Miller should not have to pay those expenses twice. He, therefore, recommended that Mr. Miller only pay Mrs. Miller 25% of the difference in marital *Page 23 
assets he consumed. That determination was not an abuse of discretion. Mr. Miller's third assignment of error is overruled.
 ATTORNEY FEES {¶ 70} Mr. Miller's seventh assignment of error is that the trial court incorrectly awarded Mrs. Miller attorney fees in excess of what she was actually charged. The magistrate noted that Mrs. Miller had received a "professional discount" on her attorney fees and determined that Mr. Miller should not receive the benefit of that discount. He, therefore, concluded that Mrs. Miller's "attorney fees should be considered double as to the amount owed to [her Ohio lawyer]."
 {¶ 71} Section 3105.73(A) of the Ohio Revised Code permits a trial court to "award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A). "[Section] 3105.73 gives the court broad discretion in determining attorney fees." Peters v.Peters, 9th Dist. No. 06CA008869, 2006-Ohio-5815, at ¶ 17. Its award "will not be disturbed on appeal absent a showing of a clear abuse of discretion by the court." Guziak v. Guziak, 80 Ohio App. 3d 805, 816
(1992).
 {¶ 72} Mrs. Miller submitted exhibits indicating that her Ohio legal fees were approximately $22,400, that her Rhode Island legal fees were approximately $14,000, and that her appraisal fees were approximately $5200. The magistrate determined that Mr. Miller should be responsible for "some of [Mrs. Miller's] attorney fees" and recommended that his property division payment be increased by $22,000. The trial court adopted that recommendation. *Page 24 
Accordingly, although the trial court ordered that "[e]ach party shall be responsible for their individual attorneys fee both in Ohio and Rhode Island," because it increased Mr. Miller's property division payment to cover some of Mrs. Miller's legal fees, Mr. Miller, essentially, was responsible for paying those fees.
 {¶ 73} Mr. Miller is incorrect that the trial court required him "to pay 200% of what was charged." It only required him to pay $22,000, which did not even cover the entire discounted amount charged by Mrs. Miller's Ohio lawyer. He has, therefore, failed to establish that the trial court abused its discretion when it required him to pay some of Mrs. Miller's attorney fees. His seventh assignment of error is overruled.
 MARITAL DEBT {¶ 74} Mr. Miller's eighth assignment of error is that the trial court incorrectly calculated the amount of marital debt, incorrectly determined what debt was marital and what debt was separate, and incorrectly assigned certain debts to him. Specifically, he has argued that the trial court incorrectly found that he was responsible for a Montessori school bill and incorrectly found that $18,000 owed to the family business's accountant was his separate non-marital debt. "A trial court's division of marital debt will be affirmed in the absence of an abuse of discretion." Briggs v. Briggs, 9th Dist. No. 14852,1991 WL 108516 at *3 (June 5, 1991).
 {¶ 75} Regarding the Montessori school debt, Mr. Miller has argued that the affidavit Mrs. Miller attached to her initial request for temporary support indicated that her monthly budget was $4875 and that it included $725 for Montessori school tuition. Although the magistrate ordered Mr. Miller to pay enough temporary support to meet that monthly budget, Mrs. Miller failed to completely pay their daughters' tuition. He, therefore, has argued that it *Page 25 
was inequitable for the trial court to require him to pay the outstanding tuition balance because he would, in essence, be paying the bill twice.
 {¶ 76} Mrs. Miller submitted a letter indicating that the Montessori school had received $5000 for tuition and that $3170 was still owed. Mr. Miller did not present any evidence that Mrs. Miller had not made monthly payments towards their daughters' tuition as she represented in her budget. In addition, the magistrate properly classified the tuition obligation as a marital debt and gave Mr. Miller credit for it in determining his net property division. This Court, therefore, concludes that the trial court did not abuse its discretion when it ordered that he be responsible for paying the Montessori school debt.
 {¶ 77} Regarding the accounting debt, Mr. Miller has argued that the accountant's charges were for the preparation of the parties' joint taxes, the business's taxes, and for the divorce litigation. He, therefore, has argued that at least some of the expenses should have been considered marital debt.
 {¶ 78} The accountant's invoice listed charges for time he spent providing data for one of the appraisers of the family business, reviewing company information with that appraiser, meeting with Mr. Miller about the appraiser's report, helping Mr. Miller respond to discovery requests, speaking with Mr. Miller's lawyer about this action, preparing documents for Mr. Miller's lawyer, reviewing the report of Mrs. Miller's appraiser, and preparing for and attending a deposition. Because all of those charges were for litigation-related activities, the trial court correctly determined that Mr. Miller's fee obligation was non-marital debt.
 {¶ 79} Mr. Miller has also argued that, even if the accountant's fees were litigation expenses, the trial court abused its discretion when it treated them differently than Mrs. Miller's attorney fees and litigation expenses. Section 3105.73(A) provides that "[i]n an action for *Page 26 
divorce, . . . a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." Considering that Mr. Miller has a higher income and was awarded more of the marital assets, he has not established that the trial court's failure to make Mrs. Miller pay for some of his litigation expenses was an abuse of discretion. His eighth assignment of error is overruled.
 EXPERT TESTIMONY {¶ 80} Mr. Miller's ninth assignment of error is that the trial court incorrectly admitted the testimony of two of Mrs. Miller's experts because it failed to comply with the threshold standards established by Rule 702 of the Ohio Rules of Evidence and Daubert v. Merrell DowPharm., 509 U.S. 579 (1993). He has argued that both experts were allowed to testify about Mrs. Miller's ability to work even though neither was qualified as an expert in vocational capabilities. He, therefore, has argued that both witnesses' testimony about Mrs. Miller's vocational ability should have been stricken.
 {¶ 81} Mr. Miller has failed to establish that he was prejudiced by the challenged testimony. As he has noted, the magistrate stated that he had given "little weight" to one of the expert's testimony. Although both of the experts testified that Mrs. Miller could not return to work, the magistrate, instead, gave "considerable weight" to Mr. Miller's vocational expert's testimony that she could return to work immediately and begin earning between $30,000 and $40,000 per year. The magistrate, in fact, imputed $40,000 to Mrs. Miller for purposes of calculating child support. Furthermore, there is no indication that the experts' testimony affected the magistrate's spousal support recommendation. Accordingly, any alleged error was harmless. See Civ. R. 61; see alsoConti v. Spitzer Auto World Amherst Inc., 9th Dist. No. 07CA009121,2008-Ohio-1320, at ¶ 10. Mr. Miller's ninth assignment of error is overruled. *Page 27 
 CONCLUSION {¶ 82} The trial court incorrectly included the custodial accounts of the parties' children in its division of property calculation. The judgment of the Wayne County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed equally to both parties..
 WHITMORE, J. CONCURS *Page 28